TENA DAHNA, Appellee, v. FUN HOUSE COMPANY, Appellant.

**TRIAL:** Instructions—Construction as a Whole. Different instructions
1   may, when construed together, so fairly present the real issue to the jury as to cure a material inaccuracy which exists in one of the instructions when viewed by itself.

**TRIAL:** Instructions—Limiting Jury to Testimony. An instruction
2   which limits the jury to the testimony *produced* and *submitted* does not necessarily constitute reversible error.

**NEGLIGENCE:** Acts Constituting—Concealed Amusement Device. The
3   maintenance and operation of an amusement device may constitute actionable negligence as to one from whom the maintenance and operation were *concealed,* even though it might be otherwise as to one who had full knowledge.

**NEGLIGENCE:** Assumption of Risk—Lack of Knowledge. An injured
4   party may not be held to assume the risk of a defect of which he had no knowledge.

Headnote 1:    38 Cyc. p. 1779.  Headnote 2:  38 Cyc. p. 1621.  Headnote 3:  38 Cyc. p. 268.  Headnote 4:  29 Cyc. p. 514 (Anno.); 38 Cyc. p. 270.

Headnote 1:  14 R. C. L. 812, 813.  Headnote 4:  L. R. A. 1918E, 221; 20 R. C. L. 109.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 22, 1927.

Action at law, to recover damages for personal injuries. Verdict and judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Comfort & Comfort,* for appellant.

*J. G. Myerly,* for appellee.

EVANS, C. J.—I.   The appellant is a corporation, which, at
the time complained of, owned and operated an inclosure, or
building, located in Riverview Park in the city of Des Moines,
under the designation of a "Fun House." The
device complained of is rather imperfectly
described in the record, but, as we understand
the record, it consisted of a platform a few feet square, so
arranged as to constitute a part of the floor.   It was inclosed on
each side by railings, between which patrons passed in entering
the amusement place, and was operated by the use of a lever.
There is some conflict in the evidence as to whether the descent
and elevation of the platform were rapid or moderately slow.
It is the claim of appellant that the descent and elevation, which
were accomplished by compressed air, were necessarily slow.

1. TRIAL: instruc-
tions: construc-
tion as a whole.

Appellee entered the Fun House with two companions in
June, 1924.   She paid the regular admission fee before entering.
When she stepped upon the platform, it began to descend, and
in some way, perhaps when the operator moved the lever or other
mechanism for the purpose of elevating the platform, she fell, in
such a manner as to break the bones of her left ankle.   This ac-
tion for damages followed.   The jury returned a verdict in
appellee's favor for $1,650.   The insufficiency of the evidence to
sustain the verdict, and error in the court's instructions, are the
principal propositions urged by appellant for reversal.   The
Fun House had been operated for several years, and but one
accident had previously occurred, notwithstanding the fact that
thousands of people had come in contact with the device.

It is the obvious theory of appellee that the platform, as
arranged in the floor and as operated, without notice or knowl-
edge on the part of the person coming in contact therewith, was
dangerous, and that its maintenance and operation constituted
negligence.   It was at no time claimed by appellee that the
mechanical equipment was defective, or that the machinery was
negligently operated.   So far as its mechanism was concerned, it
appears to have been safely constructed.   When operated at all,
it was necessarily in the manner contemplated and intended
when the device was placed in position.

The first complaint of appellant to which we desire to give
attention is the alleged error in Instructions 1 and 8.   The ex-
ceptions to these instructions challenged only the propriety of

the submission to the jury of the grounds of negligence therein stated, upon the theory that the evidence does not justify the same. It must be conceded that the instructions are vague, and did not adequately apprise the jury of the negligence alleged. The jury were told in Paragraph 1 of the court's charge that the two acts of negligence alleged and to be determined by the jury were:

"1. That the defendant company negligently and carelessly operated the device referred to in the evidence as the submarine, while the plaintiff was thereon.

"2. That the defendant company was negligent in failing to advise the plaintiff of the construction of the floor of the said submarine dip, and of the manner in which it might or would be operated, before permitting the plaintiff to step thereon."

Standing alone, and without more, this instruction wholly failed to submit to the jury the matters relied upon to constitute negligence on the part of appellant. If the court had in mind that appellant was negligent in the manner in which the mechanism was operated, or that the device was so inherently dangerous as that it was incumbent upon appellant to notify and warn its patrons thereof, then we think the allegations of the petition were not understood. The court, however, in Paragraph 8 instructed the jury:

"You are further instructed that no question is presented in this case as to faulty or negligent construction of the device in question. The proposition relied upon by the plaintiff in this case as constituting negligence on defendant's part is that the device in question, when plaintiff stepped thereon, was operated in a dangerous manner, without any notice to the plaintiff that the same would or might be so operated. In other words, it is plaintiff's claim that the defendant company was negligent in operating said device as it was operated, which she claims was the proximate cause of the accident and her resulting injury."

Taking the two instructions together, we think it was made fairly plain to the jury that the negligence complained of was in the maintenance and operation of a secret device in the manner described, although as intended by appellant. Thus interpreted, we are of the opinion that the evidence was sufficient to justify the submission of the issue to the jury. The device was

not inherently dangerous. There was nothing in its construction or mechanical operation that could in any way have caused injury to appellee. It required some affirmative voluntary act on the part of appellant, to cause an injury. The amusement produced by the operation of the device was in the surprise and confusion caused to the person stepping thereon.

II. Instruction 15 is also complained of. The portion of the instruction challenged is identical with that given in *State v. Patrick*, 201 Iowa 368. We there criticized it, but did not make

2. TRIAL: instructions: limiting jury to testimony.

it a ground of reversal. The particular complaint of the instruction is that it too strictly limited the jury in its deliberations to the specific evidence produced and submitted, and did not allow the jury to draw all proper inferences and deductions from the testimony. The instruction is unfortunate in its phraseology, but we are of the opinion that it was not necessarily prejudicial.

III. It is also contended by appellant that neither the device nor the manner of its operation constituted negligence; that, if it did, appellee assumed the risk incident thereto. The testi-

3. NEGLIGENCE: acts constituting: concealed amusement device.

mony tended to show that thousands of patrons had passed over the platform without injury; that its descent and elevation required 30 or 40 seconds; that its movement was not so swift as to throw a person standing thereon, or to cause one to fall in such a manner as to be injured; and that what transpired was a mere accident, which could not have been anticipated or foreseen, for which appellant is in no wise liable.

Appellee testified that she knew nothing of the device or the character of the entertainment provided in the Fun House, at the time she entered it. She could have assumed no risk when

4. NEGLIGENCE: assumption of risk: lack of knowledge.

she knew nothing of the hazard of which she complains. The device was carefully concealed, and she could not have anticipated that a portion of the floor of the building would sink when she attempted to pass over it. The facts that the device had been maintained and operated for years, and that large numbers of people have been submitted to similar experience and escaped, except in the one instance, without serious injury, are matters which the jury was bound to take into consideration in weighing the testimony. Appellant was not required to anticipate and guard against re-

mote possibilities of injury, but was bound to exercise ordinary care in the equipment of the instrumentality for the amusement of its patrons.

The question at this point, we think, was for the jury. There is always more or less danger of injury from a sudden fall, resulting from some unforeseen and unknown danger. Many devices are operated in amusement places and parks that are more or less dangerous. Usually, however, the hazard is open and visible to the patron. The device in question was wholly concealed, and could not have been discovered by appellee.

We shall refer to but three of the cases cited by appellant. The device which caused the injury for which damages were sought in *Carlin v. Krout*, 142 Md. 140 (120 Atl. 232), was what is known as an "Ocean Wave." It was open and visible to the plaintiff, and she knew and understood the manner in which it operated, and that some hazard was involved in going thereon. A judgment for plaintiff was reversed.

*Nicoletti v. Park Circuit & Realty Co.*, (Mo. App.) 287 S. W. 661, involved a claim for damages caused, as the plaintiff alleged, by being violently thrown from a slide on which she attempted to ride onto the ground. In making the slide, plaintiff sat upon a canvas pad, and was given a push, to start the descent. The device and the manner of its operation in this instance were open and visible to the plaintiff. In this case, a verdict in favor of the defendant was sustained.

The device in *Denver Park & Amusement Co. v. Pflug*, 2 Fed. (2d Series) 961, was a broad canvas belt, operated over a series of rollers. The patron sat upon the belt, and at the end of the ride, which brought her close to the ground, she was supposed to land in such a manner as to immediately rise to her feet. The device had been in operation for a long time, and it was claimed that 60,000 people had ridden on it without injury. In the latter case, the jury returned a verdict for the plaintiff, and the court of appeals of this circuit reversed it, upon the ground that no negligence was shown. The court in its opinion gave great emphasis to the fact that the device had been in operation for a long time, and that, notwithstanding the large number of patrons who had ridden on it, no injury had previous-

ly resulted. The judgment was reversed, the court holding that no negligence was shown.

In each and all of the foregoing cases, the open and visible character of the instrumentality, together with the manner of its operation, was given great, if not controlling, significance. It is not necessary that we express approval or disapproval of the conclusion reached in the cited cases.

IV. At the time of her injuries, appellee was earning $85 per month; she was laid up six months, and expended for medical treatment and hospital expense $226. The verdict was for $1,650. This verdict appellant thinks excessive. Both bones of the ankle were broken, and appellee suffered much inconvenience and pain. The verdict is not large, and will not be reduced.

Other matters argued are without substantial merit, and will not be discussed.

We find no reversible error in the record.—*Affirmed.*

STEVENS, FAVILLE, KINDIG, and WAGNER, JJ., concur.