CHARLES WIENEKE, Appellee, v. H. E. STEINKE et al., Appellants.

No. 40163.

478

December 9, 1930.

*Nichols, Nichols & Milroy* and *R. S. Milner*, for appellants.

*Maurice P. Cahill*, for appellee.

KINDIG, J.—On November 12, 1927, the plaintiff-appellee was injured by an automobile belonging to the defendant-appellant H. E. Steinke, and driven by the defendant-appellant Merle Steinke. This accident occurred on the Lincoln Highway, about six miles west of Cedar Rapids. Apparently the unfortunate event took place late in the evening, and there is a dispute between the parties as to whether it was daylight or dark.

Appellee is a farmer, whose house is on the north side of the Lincoln Highway at the point where he was injured. The road is paved. South of the paved thoroughfare, opposite the aforesaid house, appellee owned, or had possession of, a field, in which at that time six cattle were pastured. When bringing these animals from the pasture across the road to the barns and yards near the house, appellee, in order to warn automobile drivers of the approaching animals, placed a red flag in the middle of the Lincoln Highway. Merle Steinke, appellant, the minor son of the appellant H. E. Steinke, at the time in question

was driving a service car which he had taken from his father's garage at Keystone. Carl Pingle, a boy 16 years old, was accompanying Merle on this occasion. These boys were traveling westward from Cedar Rapids over the Lincoln Highway, approaching the place thereon where appellee had put the red flag. After thus placing the red flag, appellee noticed the car approaching, and stood near the middle of the road, he says, trying to stop the on-coming automobile. While so doing, appellee asserts, he stood a foot or more south of the black mark indicating the middle of the pavement. When noticing that the car would not stop, appellee declares, he commenced to step southward from the black mark, and was there struck by the automobile.

It is appellants' version, however, that appellee was on the north side of the black line above mentioned, when the car approached. Believing that appellee could not be safely passed by turning to the right, Merle Steinke, the appellant, insists that he turned to the left, onto the pavement south of the mark. Following that turn, appellants urge, the appellee suddenly moved, or jumped, from his position of safety on the north side of the black line into a place of danger to the south thereof. Immediately thereafter, appellee was struck by the fast-moving vehicle and knocked to the pavement, thereby receiving the injuries of which complaint is made.

Hence it is seen that a dispute exists concerning the exact manner in which the accident occurred. For the purposes of this suit, H. E. Steinke, the father, was appointed guardian ad litem for his minor son, Merle. All the appellants have briefed and argued the case on this appeal. No brief or argument, however, has been filed by the appellee.

I. From the above and foregoing statement of the conflicting facts, as claimed by the contending parties, it becomes plain that underlying appellants' defense is appellee's negligence in  leaving his safe place on the north side of said line, and suddenly jumping, or rapidly moving, over the line onto the south side thereof, as the car was passing by. Closely connected with appellants' thought in this regard is the further claim that appellee led the driver to believe he would remain in the safe place on the north side of the mark, and then, when the operator

turned the car to the south, surprised him by suddenly moving over there' into the danger zone. That theory became important in appellants' defense. To prove that appellee suddenly jumped, or moved, from the safe into a dangerous part of the pavement, appellants interrogated Carl Pingle concerning the accident. This witness said:

"As we [the witness and the appellant Merle Steinke] approached [the place where appellee was standing, near the red flag on the Lincoln Highway], we were coming down the hill and going up the next hill when we saw the man [appellee] on the north side of the black line [on the Lincoln Highway], almost in the center of our half [the north half] of the pavement, waving his hands, as we approached him, and we saw the red flag. Merle [the appellant Merle Steinke] turned the car to the south, to avoid hitting the man [appellee], as you naturally would, while going toward another man; and just as he [Merle Steinke] had turned the car south, it seemed as though the man [appellee] had jumped right in front of the car, and we [the witness and Merle Steinke, appellant] hit him [appellee]."

At this place, appellee's attorney made the following oral motion:

"Move to strike out the part of the answer 'It seemed as though the man jumped right in front of the car,' as a conclusion, and not a statement of an evidentiary fact.

"The Court: Sustained. It ought to go out of the evidence. Exception [by appellants]."

The court's action in sustaining that motion is now made a basis for reversal by appellants. Undoubtedly appellants were prejudiced when the evidence went out of the record. There was no other testimony covering the particular point, and indicating the suddenness with which appellee moved. If, then, the district court wrongfully sustained the motion, there must be a reversal. Was the ruling correct? Manifestly not. By testifying in the manner and way aforesaid, the witness Pingle was describing appellee's action. As a vehicle to explain his thought, the witness used the word "seems." According to Webster's New International Dictionary, that word means, "to manifest one's self or itself; to show; * * * to make pretense;

to assume an appearance; * * * to appear to one's own mind or opinion." Obviously, the witness was describing appellee's action as the same appeared to him while riding in the automobile. Without doubt, the answer contained a conclusion, as well as a statement of fact. Under the circumstances, the fact that the answer contained matters which in a way indicated a conclusion is not necessarily fatal to the admission of the evidence. Sometimes it is difficult to distinguish between an opinion and a fact in matters of this kind. Unless the witness could thus describe appellee's action, there would be no way for him to give the jury an idea of what he saw at the time. In the absence of such license, the witness could not reproduce for the jury, or describe to them, appellee's movement. Consequently, it was proper for the witness to make the answer, including part fact and part opinion or conclusion. *Yahn v. City of Ottumwa,* 60 Iowa 429 (local citation 432); *Dolan v. Henry,* 189 Iowa 104 (local citation 122); *Ewing v. Hatcher,* 175 Iowa 443 (local citation 446, 447); *Looney v. Parker,* 210 Iowa 85; *Stilson v. Ellis,* 208 Iowa 1157.

A quotation from *Yahn v. City of Ottumwa* (60 Iowa 429), supra, will aid the discussion here. On page 432 of the opinion, among other things, we said:

"It is true that the dividing line between what is a fact and what is an opinion is not and cannot be very clearly defined. But it surely is competent for a witness to state whether the horses were frightened by a stream of water thrown upon or around them, or by the escape of steam from an engine, or by being set upon by a dog, or the like. The observation of the witness as to cause and effect is a fact which he may state to the jury. Upon a question like this, the discharge of the water from the hose and its effect upon the horses *appears* to us to be a compound of fact and opinion [the italics are ours]. To hold that it is incompetent would limit and hamper the introduction of evidence in a manner not contemplated by any rule of law of which we have any knowledge. If it be the law that a witness not an expert may not, under any circumstances, give an opinion, the statement of these witnesses that the horses were frightened would not be admissible. But the rule is not thus to be applied. It is competent for a witness to testify to his conclu-

sion when the matter to which the testimony relates cannot be reproduced or described to the jury precisely as it *appeared* to the witness at the time [the italics are ours]. It appears to us that the subject-matter—the alleged fright of the horses in this case—was of the character just described. A witness may see a team frightened, and may state the fact that water was thrown from a hose upon or near the team, and he may describe how and when it was thrown; and yet he cannot put the jury in his place in regard to the facts, without stating his conclusion as to the effect of the throwing of the water.''

Further discussion is unnecessary, for it is apparent that the evidence was admissible, and should have remained in the record.

Prejudice arose because the district court struck out the witness's testimony. Such testimony was highly important to appellants' defense. Therefore, the judgment of the district court must be reversed.

II. Several witnesses for the appellee were permitted, over the objections of appellant H. E. Steinke, to relate statements made by the appellant Merle Steinke so long after the accident  as not to be a part of the *res gestae.* Those statements tended to indicate that Merle was negligent in causing, and legally liable for the damages resulting from, appellee's injury. Not being a part of the *res gestae,* those statements and declarations of the appellant Merle Steinke, who was driving the car, were not admissible against the appellant H. E. Steinke, the man who owned the automobile. Appropriate objections to this testimony were made by the appellant H. E. Steinke on the theory that he was not bound by the admissions or statements of Merle under the circumstances. Later, the appellant H. E. Steinke moved to strike such statements from the record. Both the objections to the evidence and the motion to strike the testimony from the record were overruled. When submitting the cause to the jury, the district court did not tell the fact-finding body that these statements, alleged to have been made by Merle, the son, were admissible as against him only, and could not be considered in determining the liability of his father, H. E. Steinke. It would have been the better practice

for the district court to have sustained the objection to the evidence when it was made, so far as the appellant H. E. Steinke was concerned, but let the testimony remain as against the appellant Merle Steinke. Then, when the cause was submitted to the jury, the trial court should have clearly informed that body to consider the statements against Merle only, but in no event give them effect when determining the liability of the appellant H. E. Steinke. *Wilkinson v. Queal Lbr. Co.*, 208 Iowa 933; *Cooley v. Killingsworth*, 209 Iowa 646; *Looney v. Parker* (210 Iowa 85), supra.

Apparently the appellants asked no instruction of the nature under discussion. Whether reversible error exists, under the circumstances, without such request for instruction, we do not now decide. Yet the action of the district court in overruling the objection of the appellant H. E. Steinke, challenging the questions intending to bring forth the alleged statements made by the appellant Merle Steinke, and the subsequent failure to give an appropriate instruction relating thereto, as above suggested, associated with the error pointed out in Division I of the opinion, are sufficient to warrant a reversal.

Therefore, because of the reasons pointed out, the judgment of the district court must be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.