CHARLES EGE, Administrator, Appellee, v. JOSEPH C. BORN et al., Appellants.

No. 40780.

1140

APRIL 10, 1931.

REHEARING DENIED SEPTEMBER 26, 1931.

Kenline, Roedell, Hoffman & Tierney, for appellants.

John J. Kintzinger, for appellee.

WAGNER, J.—The plaintiff is the administrator of the estate of Wilhelmina Ege, deceased, who, on November 11, 1929, died as the result of injuries received by her two days before in the collision of an automobile, driven by the defendant, Born, with a light spring wagon, driven by the decedent. The defendant, LaPrell, owned and operated two butcher shops in the city of Dubuque, one at Number 1278 Central Avenue and the other at Number 2710 Jackson Street. Born was employed by LaPrell as a delivery boy. Shortly after noon on November 9th, Born was directed by LaPrell to take some meat from the shop located on Central Avenue to the one on Jackson Street. There is no question that Born had authority to use the car for the delivery of the meat. Jackson Street runs north and south, and in going north on said street and before getting to the butcher shop situated thereon, to which he was to make the delivery of the meat, he was stopped by a policeman on a motorcycle for speeding. Born then requested the officer to test the speedometer and the

officer consented to assist him in making the test. After the delivery of the meat, Born, in the automobile, and White (the officer) to the left, on a motorcycle, proceeded north on Jackson street to make the test of the speedometer. As stated, this test was made at the request of Born. The officer told Born to inform him when the Speedometer showed a speed of twenty miles an hour, which was done, and there was found to be a discrepancy between the speedometer and the true rate of speed of three miles per hour. As they proceeded, Born was told by the officer to inform him when the speedometer registered twenty-five miles per hour, and as they proceeded up the street between 28th and 29th Street the car driven by Born collided with the spring wagon or buggy of decedent, also being driven north, and the decedent was thrown from the spring wagon to the pavement next to the curb stone on the right side of the street and received injuries as the result of which she died two days later. The officer testified, without objection, "Born said he saw the buggy just too late to avoid hitting it; he said he was looking at his speedometer." The pavement on Jackson Street is forty feet wide between the curbstones. The officer testified that, as the decedent proceeded north, the wheels on the right side of the buggy were approximately three feet from the right hand curb. The street is one largely traveled and the accident occurred in a thickly populated portion of the city, there being a number of residences on the right side of the street and a floral shop on the left side. According to the record, there was ample room between the officer on the left and the buggy to enable Born to safely pass the buggy. It was a bright, clear day; there were no distracting circumstances—nothing to obscure the view and prevent Born from seeing the buggy, which was plainly visible and in the direct line of his vision immediately in front of him. Born testified that, as he was going north, "I was watching the street, the speedometer and the officer. * * * From where we had the talk about the speed to within about eight feet from the buggy, I was watching the speedometer but before that time I was watching the street, the speedometer and the officer."

The plaintiff, in his petition, alleges that defendants were negligent in the following particulars:

(1) "In failing to pass the horse and buggy of plaintiff's

intestate without striking said buggy. (2) In failing to have his automobile under proper control so that he was able to stop before hitting the buggy of plaintiff's intestate. (3) In failing to keep a lookout for vehicles traveling ahead of him and to prevent collision therewith. (4) In failing to see plaintiff's intestate and the horse and buggy ahead of him until just before striking the same. (5) In testing out his speedometer at the time and place in question without having due regard to the traffic and the then existing conditions on Jackson Street.''

The defendants moved to strike each of said grounds of negligence from the petition, for the reason as claimed by them, that said allegations are only statements of incompetent opinions and conclusions. They also moved to withdraw the same from the consideration of the jury. Said motions were overruled and each of said grounds of negligence was submitted to the jury. It is the contention of the appellants that the court erred in the aforesaid rulings. They rely upon our pronouncement in Cooley v. Killingsworth, 209 Iowa 646. We there held it to be error for the court to submit to the jury as a ground of negligence the general allegation, ''that the driver operated and drove the automobile without regard for the rights and safety of the lives and property of others rightfully upon and using (the) * * * highway;'' and that while said allegation follows in a general way, the language of Section 5028, Code, 1927, it is too general and indefinite to be the basis for the right of recovery when attacked by motion. Our holding in said case, is not authority for the contention of the appellants in the instant case. If, in the first ground of negligence alleged, the pleader had stated that the driver failed to turn his automobile to the left a sufficient distance to enable him to pass the vehicle in which the decedent was riding, it would hardly be contended that the allegation is a statement of a mere conclusion, and yet, this is virtually the equivalent of the allegation contained in the petition. The statements that the driver failed to pass the horse and buggy, without striking same, that he failed to have his automobile under proper control, that he failed to keep a lookout for vehicles traveling ahead, that he failed to see plaintiff's intestate and the horse and buggy ahead of him, and that the testing of his speedometer in the manner stated at the time and place

in question constituted negligence are sufficient statements of ultimate facts. Any failure to exercise ordinary care, that is, such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances relative to any one of the aforesaid particulars charged in the petition would constitute negligence, and the court so instructed. The court was not in error in refusing to strike said allegations from the petition. The record contains evidence in support of each of the aforesaid grounds of negligence; therefore, the court was not in error in refusing to withdraw the same from the consideration of the jury.

The appellants further contend that the court should have sustained their motion for a directed verdict on the ground that the decedent was, as a matter of law, guilty of contributory negligence. It is their contention that, at the time in question, she was driving contrary to the provisions of an ordinance of the city, which provides:

"Slowly moving vehicles shall keep as close as possible to the right hand curb so as to allow more swiftly moving vehicles free passage to the left."

There is evidence from which the jury could properly find that, at the time in question, the wheels on the right side of the buggy were three feet from the curb and that there was ample passage way to the left of the vehicle which she was driving. There was no error in the overruling of the motion for a directed verdict.

The appellants complain because the court in one of the instructions stated that the duty to use ordinary care to observe automobiles and other vehicles ahead also implies the duty to see automobiles and other vehicles which are plainly visible. It is their contention that this instruction is erroneous because, as claimed, it imposed upon the driver of the car the absolute duty to see the vehicle driven by the decedent. In Holderman v. Witmer, 166 Iowa 406, we said:

"The duty to look implied the duty to see what was in plain view, unless some reasonable explanation is presented for a failure to see."

In Smith v. Spirek, 196 Iowa 1328, we said:

"When the defendant saw, or with reasonable diligence could have seen, the decedent in time to so operate his car as to avoid the accident, it became his duty to so act."

The physical facts are such that, if the driver of the automobile had looked, he must have seen the vehicle in which the decedent was riding, which was immediately ahead of him. In the instant case, no reasonable explanation, in fact, no explanation is offered for the driver's failure to see. It was a bright, clear day and nothing to becloud the vision of the driver. There was no sudden emergency and no distracting circumstances, unless it be the testing of the speedometer, and this circumstance was of his own voluntary making. A diverting or distracting circumstance, self induced or of one's own voluntary making, is not sufficient to excuse him for failure to see what he must have seen had he looked. Bender v. Town of Minden, 124 Iowa 685; Cutshall v. City of Keokuk, 185 Iowa 808. Although he was at the time engaged in the testing of the speedometer, yet, he was voluntarily propelling the automobile along the highway, and it became his duty in so doing, to keep a lookout and to see what he must have seen, had he looked. The driver of an automobile must know that other persons have a right to use the street, and it is his duty to anticipate that the street will be so used and it therefore becomes his duty, in the absence of sufficient distracting circumstances, to look and to see what is plainly visible in the street ahead of him. As applied to the record in the instant case, the aforesaid instruction is not erroneous.

It is shown that two of the decedent's sons were at the hospital the next day after the injury, and that there, in conversation with Born, the driver of the car, he stated, in substance, over the objection of the defendants, that he was going up Jackson Street; was watching his speedometer and that he looked up and saw the rig and then it was too late to turn out and he hit it; that there was no need to worry; that everything would be taken care of. We have held that, while such declarations or admissions by the driver of the car, not a part of the *res gestae*, are admissible as against the driver, they are not admissible as against the owner of the car. See Wilkinson v. Queal Lumber Company, 208 Iowa 933; Looney v. Parker, 210

Iowa 85; Wieneke v. Steinke, 211 Iowa 477; Cooley v. Killingsworth, 209 Iowa 646. In the latter case we said:

"The court, in this state of the record, should have clearly informed the jury that the driver might by his own admissions or statements, establish his negligence and his liability therefor, but that, before the appellee could recover from the owner of the car for the negligence of the driver, such negligence must be established by evidence other and different from the declarations and statements made by the driver of the car."

The court instructed the jury:

"This evidence (relating to the declarations and admissions of Joseph C. Born) must not be used by you to establish negligence chargeable against the defendant George LaPrell, but if plaintiff has proven by a preponderance of the credible evidence the negligence of the said Joseph C. Born as alleged (referring to the grounds of negligence) by evidence independent of said conversations and statements, then the defendant George La-Prell is chargeable jointly with the defendant Joseph C. Born with such negligence if the said Joseph C. Born at the time of the collision in question was driving said automobile with the consent of the defendant George LaPrell."

It will be noted that the court in said instruction fully complied with our requirement in Cooley v. Killingsworth, 209 Iowa 646. It is quite clear, in view of the instruction given, that there was no error in receiving the declarations of the driver in evidence.

In another instruction, the court told the jury that the defendant LaPrell admits that the defendant Born was in his employ and had his consent to drive said automobile according to certain specific directions, but that he contends that the defendant Born deviated from the scope of the authority granted him, and then instructed fully that there could be no recovery from LaPrell, unless Born at the time in question was driving the automobile within the scope of his employment, or within the express or implied directions of the employer. The appellant LaPrell complains of the giving of said instruction. He makes no complaint that the instruction does not state a correct rule of law, but complains because the court instructed at all upon the

relationship of employer and employee, the reason given being that plaintiff's action is based upon Section 5026, Code, 1927. The defendant, LaPrell, claimed by his testimony that Born at the time of the collision had deviated from the authority given him, and that, at that time, he was not acting within the scope of his employment. If he was acting within the scope of his employment, then he was driving the car with the owner's consent, and under the record as made by the defendants, it was quite proper for the court to give the jury the correct rule of law for the determination by them of the question as to whether or not Born was performing services within the scope of his employment and authority and thereby operating the automobile with the owner's consent. Under the record, it was for the jury to determine whether Born was acting within the scope of his employment and driving the car with the owner's consent. See Orris v. Tolerton & Warfield Company, 201 Iowa, 1344.

■ The appellants complain because the court in one of the instructions told the jury that the fact that the motorcycle officer was assisting the driver of the car to test the speedometer would not relieve the driver from the duty of exercising ordinary care, that is, such care as would have been exercised by a person of ordinary prudence and caution under the same or similar circumstances. There is no merit in this complaint. The standard required by the driver of an automobile is that of ordinary care, and the instruction did not lay any greater burden upon him.

■ The appellants complain because the court, in one of the instructions, told the jury that the decedent and the driver of the car were entitled to an equal use of the street. Their exact contention is, that it was error to so instruct, because of the city ordinance, hereinbefore referred to, which provides that slowly moving vehicles should keep as close as possible to the right-hand curb, so as to allow more swiftly moving vehicles free passage to the left. They rely upon our pronouncement in Judd v. Rudolph, 207 Iowa 113, but said case is authority for the instructions which the court gave in the instant case. The validity of the ordinance is not called in question and in making our pronouncement, we assume, without deciding, that said ordinance is valid.

In the instruction complained of, the court told the jury

that both the decedent and the driver of the car "were entitled to an equal use of the street in question, but in their use thereof both were required to exercise ordinary care for the safety of the other, and to comply with the ordinances of the city of Dubuque, unless there was reasonable excuse for their failure so to do." In the following instruction, the court quoted the provisions of the ordinance and then added:

"You are further instructed that a violation of said city ordinance, without reasonable necessity therefor, constitutes negligence."

As hereinbefore stated, there was evidence from which the jury could properly find that the decedent, at the time in question, was not violating the provisions of the ordinance. It is a well recognized rule that the rights of all persons lawfully using a street or highway for travel are mutual and co-ordinate, and the operator of an automobile has no rights on the highway superior to those of others who are engaged in the lawful use of the same. There is no merit in appellant's contention at this point. See Turner v. Bennett, 161 Iowa 379; Simmons v. Lewis, 146 Iowa 316; House v. Cramer, 134 Iowa 374; Judd v. Rudolph, 207 Iowa 113..

In plaintiff's petition the amount for which recovery is sought, is itemized as follows:

"Value of services of Wilhelmina Ege
as wife and mother . . . . . . . . . . $5,000.00
Funeral expenses . . . . . . . . . . . 448.00
Doctor bill . . . . . . . . . . . . . 43.00
Hospital expense . . . . . . . . . . . 28.00

$5,519.00"

In stating the issues, in instruction Number 1, the court copies the aforesaid itemized statement from the petition. It will be noted that the funeral expenses are itemized at $448.00. The undertaker, without objection, testified as a witness, that the fair and reasonable value of the services for the burial is $447.95. No exception was taken to the instruction relative to the matters to be taken into consideration by the jury in fixing the amount of plaintiff's recovery, except for nursing or hospital care, here-

inafter referred to. No claim is made, that, because the decedent is a married woman, her estate is not liable for the funeral expenses. We have held that the estate of a married woman is primarily liable for her funeral expenses. See In re Estate of Skillman, 146 Iowa 601. The court in the instructions given relative to funeral expenses limited the amount of the recovery therefor to what we said in our pronouncement in Brady v. Haw, 187 Iowa 501.

The decedent was a married woman living with her husband; she had only two children, one boy married, and another boy, thirty-one years of age, living at home. The appellants contend in argument, that it would be improper to allow recovery for the value of decedent's services "as a mother." Under Section 10463, Code, 1927, the administrator in an action of this kind is entitled to recover the value of the services as a wife or mother, or both. The exact contention of the defendants in argument, is, that, since in the instant case, the thirty-one year old son living at home is *sui juris* and not legally dependent upon the mother, and the other son is married and is maintaining a home of his own, there can be no recovery for the value of the services as a mother. We find it unnecessary to determine the proposition, for in the instruction relative to the matters for which plaintiff is entitled to recover, nothing is said about an allowance for value of services as a mother. The jury is presumed to have followed this instruction in fixing the amount of plaintiff's recovery. The matter now urged in argument is not raised by appropriate exception to the instruction given the jury as a rule in fixing the amount of plaintiff's recovery. The only exception which the appellants make relative to said instruction, except as to hospital expenses, is, that the court erred in his statement in the instruction that the total amount of their verdict should not be in excess of $5519.00. The amount of the verdict is only $3820.00. It is quite apparent, that there was no prejudicial error at this point.

One of the contentions of the appellants is, that the court erred in the foregoing instruction in permitting a recovery for "the fair and reasonable value of hospital care for the said Wilhelmina Ege not to exceed the sum of $28.00," for the reason as claimed, that there is no competent evidence in the record to sustain it. It is shown by the record, that immediately after the

injury, Mrs. Ege was taken to the hospital where she remained for two days until the time of her death, and that an X-ray photograph was taken; nothing else is shown by the record as to the hospital care which was administered. During the trial, the husband of the decedent was shown a statement which was identified as an Exhibit, and he testified that the hospital sent it to him by mail, and that it is a bill for the hospital services rendered to Mrs. Ege. Over an appropriate objection, the said exhibit was offered and received in evidence. There is no evidence whatever as to the fair and reasonable value of the hospital care, or that the same has been paid. The Exhibit is not abstracted. The jury were authorized to allow for hospital care, not exceeding the amount claimed in the petition, without any evidence as to the fair and reasonable value thereof. In Scurlock v. City of Boone, 142 Iowa 684, we held that there can be a recovery for services rendered in nursing by unskilled persons, such as members of the family, without proof of the value thereof, but we therein said:

"Had Mrs. Scurlock (the plaintiff) received the care and attention of a professional or trained nurse whose compensation was fixed by usage, it is quite likely that evidence would be necessary to show the value thereof * * *."

In Lampman v. Bruning, 120 Iowa 167, a civil case for seduction, the evidence as to the doctor bill for obstetrical services was that of the plaintiff, who testified as to the amount of the bill and that it had not been paid. This court there said:

"But appellant (the defendant) says that 'what the doctor charged does not furnish proof of what expense was reasonable.' Such items are rarely the subject of controversy in damage suits, and where the services rendered are of a nature likely to be familiar to the jury, and the charge unquestioned, its reasonableness may be safely left to their determination."

In Carnego v. Crescent Coal Company, 164 Iowa 552, the only evidence relative to a bill for funeral expenses was that given by the plaintiff's son, who testified that the amount was $529.25, which he (the witness) had paid with money furnished him by his father (the plaintiff). We there said:

"The evidence was admissible as tending to show that the expenses had been incurred and paid. Was it sufficient to establish the reasonableness of the cost? Had the various items making up these expenses and the cost of each been stated, there might have been room for the jury to infer therefrom the reasonable value thereof, and whether they were such as properly might be chargeable against defendant for the interment of a person in deceased's station in life. * * * The general statement of the cost of funeral expenses, in the absence of any other evidence, did not justify the submission of the reasonable expense thereof to the jury."

In Remington v. Machamer, 192 Iowa 1098, the controversy was over funeral expenses, but the administrator testified that he paid the bill in the amount of $344.00 and also the charges made for hospital services and nurse hire, and that he knew the fair and reasonable value for such services. It will be observed that in said case there was evidence of the very thing which is lacking in the instant case, and it was held that there was no error in admitting the evidence relative to such expenditure. In Hobbs v. City of Marion, 123 Iowa 726, it was held that an instruction which authorized the jury to take into consideration as one of the elements of damage, expenses for care and nursing, where the value of the services is not shown by the evidence is erroneous. This court there made the following pronouncement:

"Among other things the court said: 'You may take into consideration * * * expense for care and nursing * * *.' It is objected to this that there is no evidence as to the expense incurred for care or nursing, nor of the value of the care or nursing given the plaintiff, * * * and that, in the absence of such evidence, the jury should not have been permitted to place its own estimate upon these items. An examination of the record forces us to the conclusion that this objection is well taken. While the evidence does tend to show * * * that plaintiff did receive the attention and care which her unfortunate condition required, we find nothing to show the value of such services, * * * the value of services * * * are matters concerning which, under ordinary circumstances, direct and competent evidence is available and without it they should not go to jury."

In Reutkemeier v. Nolte, 179 Iowa 342, a civil case for seduction, we said:

"No evidence was introduced to the effect that the amount so paid (for obstetrical services rendered by a doctor) was reasonable. It is urged, therefore, that there was no evidence of expense. Particular reliance is had by the appellant upon the case of Carnego v. Crescent Coal Co., 164 Iowa 552. It was held in that case that mere evidence of the payment of a lump sum of $529 for funeral expenses was not a sufficient showing that such amount was a reasonable expense. It was said in that case that, if the items and the cost of them had been disclosed, they might have furnished a sufficient basis for the jury to pass upon the reasonableness of the expense. It was also said therein, in recognition of our previous holdings, that, where the nature of the items of service is such that a jury would be likely to be familiar therewith, proof of payment is enough to carry the question of reasonableness to the jury. See Lampman v. Bruning, 120 Iowa 167; Scurlock v. City of Boone, 142 Iowa 684.

"In the case at bar, it was made to appear that the doctor had been called out to the country home twice, and that one or more visits had been made to his office, previous to such time. There is nothing startling in the amount of the bill for the services thus rendered. Most people have some idea of the ordinary charges of a doctor to his patients. If an expert had testified to their value in this case, the jury would not have been bound by his testimony, under our repeated holdings. The services rendered were substantial and important, and there is nothing in the amount of the bill that tends to excite distrust of its reasonableness; and we think the case at this point comes well within our previous cases cited above."

In Arnold v. Fort Dodge, Des Moines & Southern Railroad Company, 186 Iowa 538, we made the following pronouncement on this subject:

"The plaintiff was permitted by the instructions to recover his reasonable medical expense. The only testimony in the record on this subject is as follows: 'Hospital bill about $200; * * * besides my carfare and expenses.' There was no attempt to show, either that these amounts represented reasonable value,

or that plaintiff had, in fact, paid such sums. * * * If the plaintiff had, in fact, paid these specified amounts, we should deem that fact presumptively sufficient. Dr. Bush, the plaintiff's physician, was one of his witnesses. He could have testified to the reasonable value of the services, and to the fact that the amount had or had not been paid by the plaintiff. Plaintiff himself could have testified to the latter fact. We are disposed to avoid undue technicality as to the method of proof upon such a question. Reutkemeier v. Nolte, 179 Iowa 342. But we think it would be undue liberality to permit items of this kind to be thrown into the record for the consideration of the jury, without any semblance of evidence of their correctness. And this is especially so where the record discloses that the evidence was readily available to the plaintiff, by the actual presence of the necessary witnesses at the trial. We think, therefore, that there was error at this point. Plaintiff may have the election to cure the same by remitting the amount of these two items.''

What is said in the Arnold case is equally applicable to the instant case. What was the fair and reasonable value of the services could have been easily established by the doctor who was used as one of plaintiff's witnesses. If a properly itemized bill had been paid by the plaintiff, so as to create a sufficient presumption as to reasonableness as stated in the Arnold case, this fact could have been established by the mere asking of the question when the plaintiff was on the witness stand. It will be observed that our pronouncements, as noted by the foregoing quotations, are not in all instances harmonious. In Fowle v. Parsons, 160 Iowa 454, a doctor brought suit to recover the value of his professional services. He and another doctor testified as to the fair and reasonable value of the services performed and medicine furnished. There was no contradictory evidence and this court held that the value of the services was a question for the determination of the jury. The inquiry suggests itself: If the fair and reasonable value of the services becomes a question for the jury when the uncontradicted evidence tends to establish the reasonable value of the services, as claimed by the plaintiff, by what process of reasoning can it be proper to submit the question to the jury when there is no evidence as to the fair and reasonable value? It is true, that the jury is not obliged to rely wholly

upon the opinions of witnesses qualified to testify as to the value of such services and that in connection with such opinions, they may use and be guided by their own judgment in such matters. The jury cannot disregard the evidence and fix the value arbitrarily or in accordance with their own notion, but they should exercise their own judgment and knowledge in connection with the testimony. See Hoyt v. Chicago, Milwaukee & St. Paul Railway Company, 117 Iowa 296. In the instant case, there is no evidence whatever as to the value of the hospital care. The burden is upon the plaintiff to establish all the elements necessary for recovery. How can it be said that the plaintiff has established the right to recover the amount claimed as the reasonable value for this service by a preponderance of the evidence when there is no such evidence, and when such evidence is available? We are, therefore, constrained to hold that that portion of the instruction which informed the jury that they could allow the fair and reasonable value of the hospital services not exceeding $28.00 is erroneous, for the reason that the record affords no competent evidence of such value. This, however, will not necessitate a reversal of the case, provided the plaintiff elects to cure the same by remitting said amount.

The court gave a cautionary instruction, in which he told the jury that in making up their verdict, they should take into consideration only such evidence as has been submitted to them, or "lack of evidence, if any," and that without any prejudice against, or sympathy in favor of, either of the parties, "giving a careful examination and consideration to all of the facts and circumstances before you, and to the testimony of each witness such weight and credit as you believe it entitled to receive, and guided by the law as given you in these instructions, bring in such a verdict as your best judgment will approve, and such as will be warranted and sustained by the evidence." The appellants complain of this instruction and the words "or lack of evidence" is the target at which their complaint is aimed. There is no merit in this complaint. See State v. Patrick, 201 Iowa 368, at 372; Dahna v. Fun House Company, 204 Iowa 922; State v. Bamsey, 208 Iowa 796, at 800. In State v. Patrick, 201 Iowa 368, at 372, we criticized a cautionary instruction which omitted the matters contained in the foregoing instruction. In Dahna v. Fun House Company, 204 Iowa 922, in referring to an instruc-

tion identical with that in State v. Patrick, supra, we said that the instruction is unfortunate in its phraseology. In determining propositions of fact, the trier must necessarily consider the sufficiency and any insufficiency *or lack of evidence* in support thereof. If the trier of the facts determines that the evidence is not sufficient to establish a proposition of fact, it is because of insufficiency or lack of evidence. In the instant case, the trial court properly defined the term, preponderance of the evidence. He properly laid the burden upon the plaintiff to establish by a preponderance of the evidence all of the elements which are requisite to entitle the plaintiff to recover in a suit based on negligence. He properly told the jury in another instruction, that they are to consider and construe all of the instructions together, and apply them as a whole to the evidence in the case. It will be noted, that in the instruction under attack he told the jury to bring in such a verdict as is warranted and sustained by the evidence. Appellants' contention at this point is devoid of merit.

The appellants also complain that the verdict is excessive. There is nothing in the record to indicate that it is the result of passion or prejudice. The decedent was a lady 65 years of age, with an expectancy of 11.79 years. She was in good health, a hard working woman, performing the duties of housewife upon a little farm near the city of Dubuque—doing more than is usually done by a woman upon a farm. Under similar circumstances, we have permitted much larger verdicts to stand.

The remaining matters as to which complaint is made by the appellants relate to the rulings of the court on the introduction of evidence. We have carefully considered all of the same and find no prejudicial error.

The judgment of the trial court is affirmed, on condition that the plaintiff within thirty days from the date of the filing of this opinion, file with the clerk a remittitur of the sum of $28.00, being the amount claimed in the petition for hospital expense or care. Otherwise, the judgment shall stand reversed and the cause remanded for a new trial.—Affirmed, on Condition.

FAVILLE, C. J., and EVANS, STEVENS, ALBERT, MORLING, KINDIG, and GRIMM, JJ., concur.