Billie Jo STANLEY, a minor, by her father and next friend, William Stanley, Appellee,

v.

STATE of Iowa, Appellant.

No. 54804.

Supreme Court of Iowa.

May 11, 1972.

Richard C. Turner, Atty. Gen., and Larry M. Blumberg, Asst. Atty. Gen., for appellant.

Thomas L. McCullough, Sac City, for appellee.

LeGRAND, Justice.

The accident giving rise to this litigation occurred in 1967 on highway 175, which was then under repair pursuant to a contract between Iowa State Highway Commission and Noel Construction Company. While the work was in progress, the highway was left open for traffic and it was here that the plaintiff, Billie Jo Stanley, was injured when the truck in which she was a passenger, and which was being driven by her father, overturned.

A claim was filed with the State Comptroller as authorized by section 25A.3. It was withdrawn when it was not acted upon by the state appeal board within six months. (Section 25A.5). Suit was then started in district court and was tried to the court without a jury as section 25A.4 stipulates. Judgment was rendered for $37,000.00 plus $6000.00 for past and future medical and hospital expense. This claim for expense was assigned by William Stanley to his daughter so that the entire judgment is in her favor.

Defendant raises the following issues as grounds for reversal: (1) The trial court was without jurisdiction to try this matter because it falls within the exception set out in 25A.14(1), the Code; (2) The trial court erred in finding negligence of the defendant was a proximate cause of the accident; and (3) There is insufficient proof to support the award of damages.

We affirm on condition plaintiff files a remittitur for the amount of unproven medical bills as provided in Division VI.

I. We dispose first of the argument this claim must be disallowed because the Iowa Tort Claims Act (Section 25A.14(1), The Code, 1966) excepts from its operation the following:

"The provisions of this chapter shall not apply to:

"1. Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.*

"2. * * *

"3. * * *

"4. * * *

"5. * * *" (Emphasis added.)

Defendant's rationale is that plaintiff's right to maintain this action depends on

the state's consent to be sued under the Tort Claims Act; that plaintiff alleges negligence in the performance of a discretionary function by an agency of the state —the highway commission—and its employees; that, as shown by the portion of section 25A.14 set out above, the state has not consented to be sued for negligence in the performance of such a function; and that the trial court was therefore without jurisdiction in this matter.

Before saying why we cannot agree with defendant, we detail the facts leading up to this accident.

On July 15, 1967, plaintiff, then eight years old, was accompanying her father, William Stanley, on a trip from the family home in Farnhamville to Omaha. Mr. Stanley was driving a tractor attached to a double-deck trailer loaded with hogs which Mr. Stanley intended to deliver in Omaha. The journey took plaintiff and her father over that part of highway 175 which was then being resurfaced with asphaltic concrete. As the new surface was applied, the road was elevated, creating a drop-off of 10 to 12 inches from the edge of the pavement to the shoulder.

There were some warning signs, torch pots, and A-frame barricades along the way. The trial court found them to be wholly inadequate for the protection of motorists using the highway. We discuss this matter in more detail later.

As Stanley was driving along this portion of highway 175, an on-coming car forced him off the road. The tractor-trailer overturned, inflicting severe and permanent injuries on plaintiff.

The trial court found defendant was negligent in failing to give adequate warning of the conditions of the road and in creating and maintaining a dangerous drop-off of 10 to 12 inches between the edge of the pavement and the shoulder of the road. On this appeal defendant does not challenge this finding.

We now return to defendant's thesis that, despite the adverse findings of the trial court, there can be no recovery because the case falls within the "discretionary function" exclusion of section 25A.14(1).

This is by no means a new argument. It has arisen countless times since the advent of tort claims acts by which sovereigns have consented to be conditionally sued. Federal courts have long been plagued by such litigation. However, we have not met the problem until now.

The two cases most frequently relied on by one side or the other are Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) and Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

Dalehite involved the Texas City ammonium nitrate explosion disaster which resulted in 560 deaths, 3000 personal injuries, and property damage of two hundred million dollars. By a 4–3 vote the Supreme Court held the acts said to be negligent all fell within the "discretionary function" exclusion of the Federal Tort Claims Act—which is identical to our section 25A.14(1)—and denied plaintiffs the right to sue.

Dalehite held each specific act of negligence charged was performed precisely as the basic plan for the manufacture, packaging, labeling, and shipping of the product required. At pages 39, 40 of 346 U.S., at page 970 of 73 S.Ct., at page 1442 of 97 L. Ed. we find this statement:

"The acts found [by the district court] to have been negligent were thus performed under the direction of a plan developed at a high level under a direct delegation of plan-making authority from the apex of the Executive Department. The establishment of this plan * * * clearly required' the exercise of expert judgment."

The Indian Towing case, decided two years later, was determined on rehearing

by a 5–4 split after it had first been affirmed by an equally divided court. It involved the negligent failure of the Coast Guard to keep the signal on a lighthouse operating and the failure to give warning of its malfunction. Although the decision depended in part on the interpretation of another statute, the court touched upon the liability of the government for negligence at the "operational level" as opposed to its immunity for such conduct at the "planning level."

The effect of Indian Towing was to hold the government liable for conduct which, under Dalehite, would have required a finding of non-liability. While the majority disavowed this result and held the cases to be distinguishable, the minority considered one as overruling the other.

Virtually all the federal decisions on the "discretionary function" exception to governmental tort liability recognize and apply the "planning" and "operational" tests in reaching a decision under particular facts. The difficulty arises in attempting to tell when the one stops and the other begins.

Undoubtedly there are hard cases where planning and operation overlap, but this is not one of them. The decision to keep highway 175 open during construction was one within the proper discretionary function for which no liability would attach; but once that decision was made, negligence in carrying out that policy cannot be excused on the ground the negligent acts were performed in the exercise of discretion within the meaning of the statutory exemption.

Every act involves discretion. However, the decision not to give proper warning is no more a "discretionary function" as defined in section 25A.14(1) than is the determination to drive a state-owned vehicle in excess of the speed limit.

There are numerous cases supporting this view. American Exchange Bank v. United States, 7 C.C.A.1958, 257 F.2d 938, 944 (failure to install hand rail on postoffice steps); McCormick v. United States, U.S.D.C., Minn.1958, 159 F.Supp. 920, 923, 925 (injury resulting from negligent installation of uninsulated wires); McNamara v. United States, U.S.D.C., District of Columbia 1961, 199 F.Supp. 879, 881 (injury by fall in U.S. Capitol rotunda); Pierce v. United States, U.S.D.C., Tenn.1955, 142 F.Supp. 721, 731, affirmed United States v. Pierce, 6 Cir., 235 F.2d 466 (injury by negligent construction of electrical substation); Somerset Seafood Co. v. United States, 4 C.C.A.1951, 193 F.2d 631, 635 (failure to properly mark a sunken vessel); Dishman v. United States, U.S.D.C., Maryland 1950, 93 F.Supp. 567, 571, (negligence by physician in treatment of patient); Hernandez v. United States, U.S.D.C., Hawaii 1953, 112 F.Supp. 369, 370 (road block forcing motorcyclist off highway.)

We find a statement in Pierce v. United States, supra, 142 F.Supp. at 731, (later adopted by the 6 Cir. Court of Appeals in affirming the case) particularly applicable:

"The initial decision to construct VOW (Volunteer Ordnance Works) and the decision to reactivate [it] surely involved an exercise of discretion for which no liability attaches. Also the decision to undertake the reactivation work at the particular time * * * and similar decisions going to the over-all success of the project would necessarily involve decisions at high level in which the exercise of discretion * * * would be involved. * * * However, the Court is unable to go further and say that once the discretion was exercised to construct substations, any discretion was involved in the subsequent negligent construction and maintenance of this substation, or in the failure to warn workmen of its dangerous condition * * *. Neither can any exercise of discretion be seen in failing to take adequate precaution to see that this high-voltage power was not turned loose on such defective structure.

"Once the decision was made to construct substations and bring in power, all of the discretion required had already been exercised. Therefore, it became the duty of the government * * * to exercise due care in carrying out the program decided upon. The complete failure to do so is outside the protection afforded the discretionary functions already exercised * * *."

Here, too, all exercise of discretion had ceased before commission of the acts which the trial court found were negligent. We hold the conduct complained of clearly subjects the state to liability under the State Tort Claims Act.

Most of the cases cited by defendant fail to support its position. Principal reliance is placed on Dalehite v. United States, supra, but as stated in Pierce v. United States, supra, 142 F.Supp. at 732,

"In Dalehite the Court was careful to point out that the categories of negligent acts * * * were all responsibly made at a planning rather than operational level and involved considerations more or less important to the practicality of the government's fertilizer program."

For the reasons heretofore set out we reject defendant's argument it is immune under section 25A.14(1) of the Iowa Tort Claims Act.

II. Defendant next urges error in the trial court's finding of proximate cause. This complaint takes two separate paths. The state insists, first, that its negligence could not have been a proximate cause of the accident, and, as a corollary, it contends the negligence of William Stanley was the *sole* proximate cause of the mishap.

As previously mentioned, defendant does not dispute the finding it was negligent. The issue raised by the assignment goes only to causation. Neither does the state claim William Stanley's negligence would be imputable to his minor daughter. Again the avowed purpose is to show his conduct,

not defendant's, precipitated the accident. Although not important to the present discussion, the state, of course, would also be pleased to have this available as a defense to William Stanley's claim for medical and hospital expense incurred on behalf of Billie Jo.

Defendant must wage an uphill battle to prevail on the issue here raised. It is confronted with the finding of the trial court —binding on us if there is substantial supporting evidence—that its negligence *was* a proximate cause of the accident. It also faces, despite its argument that the court found otherwise, the holding that William Stanley was not negligent. See rule 344(f) 1, Rules of Civil Procedure; Grall v. Meyer, 173 N.W.2d 61, 63 (Iowa 1969); Kengorco, Inc. v. Jorgenson, 176 N.W.2d 186, 188 (Iowa 1970).

Defendant's task is made even more burdensome by our frequent holdings that negligence and proximate cause are usually for determination by the trier of fact. Only rarely may they be decided as matters of law. Rule 344(f), 10, R.C.P.; Grall v. Meyer, supra, 173 N.W.2d at 63.

■ We may summarily dispose of the argument dealing with Stanley's conduct. Although expressing misgivings about his exercise of due care, the trial court concluded he was not negligent in any specification alleged by defendant. We find substantial support for this conclusion. Confronted as he was with a sudden emergency—the oncoming car on his side of the road—Stanley's decision to take to the shoulder, right or wrong, cannot now on calm reflection be said to constitute negligence *as a matter of law*. This is what defendant must show to overcome the trial court's adverse finding. This means, of course, there is no issue of proximate cause as far as Stanley's driving is concerned.

■ However, defendant further argues under this assignment that the condition of the road and the failure to give additional

warnings could not have been a proximate cause of the accident.

Defendant again reaches the impasse created by the trial court's findings. These findings established negligence in the placement, condition and number of A-frame barricades used as warnings; in failing to use a sufficient number of torch pots; and in creating and maintaining a dangerous and unsafe drop-off from the edge of the road to the shoulder. The trial court expressed "shock" at defendant's disregard of the highway commission's own rules and regulations concerning safety precautions.

Nevertheless the state says these things are of no moment because Stanley already knew the road was under repair, making further warnings, barricades, or torches unnecessary.

This is a proper argument to the trier of fact, but we do not accept it as negativing proximate cause as a matter of law. Stanley, it is true, knew the road was being worked on and he knew, too, there was a drop-off from the pavement to the shoulder; but he did not know the extent of it.

Perhaps adequate warnings would have disclosed this. Perhaps, too, they would have made his election to take to the shoulder—a decision the state now criticizes—an obviously unwise one; or perhaps they would have helped him move from the road to the shoulder in safer fashion.

■  As the commission's engineer testified, the various warnings and signals along a construction route are "to delineate the hazard" for the traveler. This belies defendant's present contention that *one* warning is as good as the *many* which the commission's standards call for.

Whether the state's negligence was a proximate cause of the accident was a fact question. It could not be determined as a matter of law. Defendant's authorities do not support its argument. The cases cited deal with fact situations which, either after trial or upon the particular pleadings, were resolved against those seeking redress. Here the trial court—on a disputed fact question—reached a contrary result.

■  We make quick reference to the additional argument it was what happened *after* Stanley went off the pavement which caused him to tip over, not the drop-off from the edge of the pavement.

This is a specious claim. When the right wheels of the truck dropped off the road, the fifteen-thousand-pound load of hogs shifted. Whatever Stanley did thereafter was in a frantic effort to bring his equipment back into balance. His ultimate failure related, surely and certainly, back to his drop off the road.

III.  The remaining two assignments of error deal with the damages allowed. One challenges the award of $37,000.00 for the injuries sustained; the other says there is no evidence to support the judgment of $6000.00 for medical and hospital expense. Since they involve completely different problems, we treat each separately.

IV.  Defendant asserts the trial court disregarded rule 179, R.C.P., in fixing the amount of plaintiff's recovery. This, we are told, deprives the state of a true appeal because it is unable to determine if any of the award was for loss of earning capacity, an item upon which the state says there was no proof.

Rule 179(a) directs the court "trying an issue of fact without a jury, whether by equitable or ordinary proceedings, [to] find the facts in writing, separately stating its conclusions of law."

■  Defendant says the trial court's failure to show what amount was allocated to plaintiff's loss of earning power is fatal to the judgment. Although an injury causing permanent disability usually imports a loss in earning capacity, this is not always true. The extent of such loss and its value must, like other damages, be shown. Anthes v. Anthes, 258 Iowa 260, 270, 139

N.W.2d 201, 208 (1965). No attempt to do so was made here. However, we believe the findings made satisfy rule 179. We point out analogously that a jury would not ordinarily be required to break down its verdict as defendant wants the court to do. We recognize the federal courts have generally reached a different result under a similar rule, but we are not convinced it is a better one. See United States v. Horsfall, 10 C.C.A., 1959, 270 F.2d 107, 109; Alexander v. Nash-Kelvinator Corp., 2 C.C.A., 1958, 261 F.2d 187, 190; Hatahley v. United States (1956), 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065, 1074.

■ Furthermore we have said several times that one who is dissatisfied with the findings made should invoke the assistance of rule 179(b), which permits a motion asking that the finding be amended or enlarged. See Grall v. Meyer, 173 N.W.2d 61, 65 (Iowa 1969) and Tiemeyer v. McIntosh, 176 N.W.2d 819, 822 (Iowa 1970). In the absence of such a motion, we refuse to *assume* the trial court improperly considered an unproven element of damages.

There is perhaps an even better answer to defendant. We find strong, if not conclusive, evidence the trial court specifically excluded the claim for loss of earning capacity from its computation.

The petition alleged "severe and permanent personal injuries" including loss of a leg. It then set out plaintiff had "endured and will continue to endure pain, physical disability and inconvenience. Her ability to earn a living and her earning capacity have been permanently impaired."

We find nothing to suggest the trial court's judgment included damages for loss of earning capacity. The provisions of the Findings of Fact and Conclusions of Law quite clearly establish otherwise. The trial court found:

"* * * plaintiff was seriously and permanently injured; that she lost her right leg which was amputated just be-

low the knee; that there have been medical and hospital expenses to date; and that there will be medical and hospital expenses in the future. * * * Obviously, there was great pain and suffering and many, many problems for this little girl in the future, both physcical and mental. There is an impairment mentally and physically for any person losing a limb. Certainly, it is a great one for a girl and even greater for a young girl."

■ These are the findings upon which damages were fixed. There is no mention of loss of earning capacity. All the elements mentioned by the trial court are tragically true and amply supported by the record. They fully justify the award made without any labored assumption that the court "must have" considered loss of earning capacity.

V. The last issue before us concerns medical and hospital expense, both past and future, for which recovery was allowed in the amount of $6000.00. Objection is made that none of the charges was shown to be reasonable for the services rendered.

■ Before there can be an award for such items the evidence must show they were made necessary by the negligent act of defendant (which is not contested here) and that the amounts charged represent the reasonable fair value of the services. 22 Am.Jur.2d, Damages, sections 102–104, pages 149–154; section 311, page 410; Annotation 12 A.L.R.3d, 1347; Wood v. Branning, 215 Iowa 59, 62, 63, 244 N.W. 658, 659, 660 (1932); Melsha v. Dillon, 214 Iowa 1324, 1325, 243 N.W. 295, 296 (1932); Ege v. Born, 212 Iowa 1138, 1152, 236 N.W. 75, 81, 82 (1931) and citations.

■ Reasonableness may be shown by the direct testimony of one qualified to express an opinion on the subject; but such formal proof is not a requirement. Reasonableness may also be established by evidence of *payment* of the bill submitted. The amount charged, without payment, is

not evidence of the propriety of the charges. While a few states have relaxed this rule (see Shriver v. Silva, 1944, 65 Cal.App.2d 753, 151 P.2d 528, 536), it is still adhered to by most jurisdictions and we have not departed from it. Annotation, 12 A.L.R.3d 1347, 1356; Lawson v. Fordyce, 237 Iowa 28, 50, 21 N.W.2d 69, 82 (1945); Wood v. Branning, supra; Melsha v. Dillon, supra; Ege v. Born, supra; Arnold v. Ft. Dodge, Des Moines & Southern Railway Co., 186 Iowa 538, 547, 173 N.W. 252, 255 (1945).

 In the case now under consideration, the only evidence of the reasonableness for past services was the admission without objection of an unpaid medical bill for $681.53 and an unpaid hospital bill for $1527.95. That is all. If an unpaid bill is no evidence of reasonableness, we cannot see how, as plaintiff claims, its admission without objection gives it greater effect. A search of the record discloses nothing upon which an allowance of these expenses can be sustained, and we so hold.

∙

The situation is different, however, as to future medical expenses. One of the exhibits introduced without objection was a letter from Dr. Glenn S. Rost, who stated plaintiff would need prosthetic revisions annually until adulthood and a completely new prosthesis "every two or three years." These were minimum estimates. He further stated the "conservative" cost would be from $50.00 to $75.00 for each revision and from $350.00 to $375.00 for each new appliance. The need for future medical attention was fixed with certainty and the reasonable cost established. Taking Dr. Rost's estimates in their most favorable light for plaintiff, we believe there is sufficient proof to allow recovery for future medical and prosthetic expense in the sum of $2700.00.

We have not overlooked the statement of the state at trial that future prosthetic expense should be disallowed because the state would furnish these without cost. The trial court found this to be an uncertain and unsatisfactory arrangement, subject to numerous administrative decisions over the intervening years, and entered judgment for the estimated cost of the services instead. We believe this was the proper course.

VI. Since we affirm the trial court except as to the allowance of medical and hospital costs, it is unnecessary that the case be remanded for that purpose. Instead we reduce the judgment for those items from $6000.00 to $2700.00. If plaintiff files a remittitur of $3300.00 in the district court within 30 days from the date hereof, the judgment will stand affirmed; otherwise defendant shall be entitled to a new trial.

Affirmed on condition.

All Justices concur, except Mc-CORMICK, J., who takes no part.