Harry DAVIS, Administrator of the Estate of Ruth Ann Davis, Deceased; Harry Davis, and Harry Davis, Administrator of the Estate of Wendy Davis, Deceased, Appellee,

v.

Marvin JENNESS, Defendant,

and

State of Iowa, Defendant-Appellant.

Harry DAVIS, and Harry Davis, Administrator of the Estate of Wendy Davis, Deceased, Appellee,

v.

STATE of Iowa, Appellant.

No. 59863.

Supreme Court of Iowa.

May 25, 1977.

Rehearing Denied June 27, 1977.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Sp. Asst. Atty. Gen., and Joseph S. Kelly, Jr., Asst. Atty. Gen., Larry D. Spaulding, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant, State of Iowa.

Justus R. Miller, Miller, Miller & Miller, Cherokee, for appellees.

Heard by MOORE, C. J., and MASON, RAWLINGS, REES and McCORMICK, JJ.

REES, Justice.

We are concerned in this matter with two cases, separately tried at the trial court level but consolidated here for appeal. In both cases the plaintiff invoked the State Tort Claims Act and recovered judgments against the State of Iowa. We reverse as to both cases.

On July 5, 1973, shortly after noon, the plaintiff's decedent, his wife, Ruth Ann Davis, was operating a motor vehicle on a north-south road in O'Brien County, traveling in a southerly direction. The road is one mile west and parallel to U.S. Highway # 59. About two miles south of Sanborn the road being traversed by plaintiff's decedent intersected with an east-west county road upon which Marvin Jenness was traveling in a westerly direction. Access to the north-south road upon which plaintiff's decedent was traveling was inhibited by a stop sign, which would have required Jenness to stop before crossing the north-south road referred to. The plaintiff alleged that Jenness did not stop and yield the right of way before entering the intersection and

that the collision of the automobiles and injury resulted.

Jenness' view at the intersection was obstructed to the south by a grove of trees and to the north by a depression in the terrain. Responsively to the plaintiff's pleadings, Jenness alleged plaintiff's decedent was contributorily negligent at and prior to the time of the happening of the collision. However, Marvin Jenness entered into a covenant not to sue with plaintiff prior to commencement of the suit and was not involved in the trial of the case.

In the first suit, Harry Davis sought to recover damages for the wrongful death of Ruth Ann Davis and for loss of consortium while she was comatose. He alleged that the negligence of the State in issuing a driver's license to Jenness was a proximate cause of the accident. The record indicates Jenness' license was in fact suspended indefinitely on August 10, 1972, while Jenness was a patient at the Veterans Administration Hospital at Knoxville. He was discharged therefrom on November 10, 1972, and was furnished a certificate of discharge from the hospital director stating, "* * * Marvin V. Jenness * * * is discharged, I believing him, this day, to be restored in mind." On December 11, 1972 the suspension of Jenness' driver's license was terminated or "lifted", and reissued on January 2, 1973, after Jenness had completed a written examination and vision test. Jenness was not given an actual driving test.

In the second cause of action the plaintiff, Harry Davis, sought recovery individually and as the personal representative of his daughter, Wendy Davis. The petition in this case was filed on December 16, 1975. After answer by the State, the plaintiff filed a motion for summary judgment, alleging that the issues in the second case had been precluded except as to damages by virtue of the judgment rendered in the first case, that is to say, the case involving the death of Ruth Ann Davis. Ruth Ann Davis had remained comatose from the date of the accident until May 1, 1974, at which date she died. She had been pregnant at the time of the accident for about 30 weeks,

and 12 days subsequent to the happening of the accident she was delivered of a female child, Wendy Davis, who lived, according to the medical testimony, for a period of 42 minutes.

In the second case plaintiff's motion for summary judgment was sustained and the matter went to trial for the sole purpose of determining damages.

In the first case, involving the claimed wrongful death of Ruth Ann Davis, the court rendered a judgment of $228,823.94 to the estate of the decedent and $5,000 to Harry Davis, individually, for loss of consortium. In the second case, involving the claimed wrongful death of Wendy Davis, the trial court awarded damages of $33,477.23 to the estate and $15,000 to Harry Davis, individually, for loss of companionship.

Appeals were taken by the State of Iowa from all of the judgments rendered. We deem a discussion of all of the issues stated for review unnecessary as we base our reversal on the following issues:

(1) Did the State of Iowa incur liability by lifting or terminating the suspension of Marvin Jenness' driver's license?

(2) Was Trooper Maynard Schutt, the driver's license examiner, who reissued the driver's license to Jenness, negligent in failing to require Jenness to take a manual driver's test prior to reinstating his license?

(3) Was the reinstatement of the driver's license to Jenness a proximate cause of the accident?

■ I.   The State contends that the reinstatement of a driver's license lies within the discretionary function exception of § 25A.14(1), The Code, which provides that the chapter does not apply to:

"Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency

or an employee of the state, whether or not the discretion be abused."

If the issuance of a notice to "lift" or terminate the suspension of a driver's license by the Department of Transportation falls within the above exception, the State is immune from suit based upon such action. Therefore, we must examine the procedure of the issuance of a "lift" notice to determine whether it falls within the exception set out in § 25A.14(1).

The statue relative to lifting suspensions is § 321.212, The Code, which provides in pertinent part:

"The department shall not suspend a license for a period of more than one year, except that a license suspended because of incompetency to drive a motor vehicle shall be suspended *until the department receives satisfactory evidence* that the former holder thereof is competent to operate a motor vehicle. * *" (Emphasis supplied).

Jenness' license was suspended pursuant to § 321.210(4), The Code, for lack of mental competence. The Department of Transportation (then the Public Safety Department adopted rules delineating what constitutes "satisfactory evidence" of mental competence. See 1973 Iowa Departmental Rules, Public Safety Department, 13.16(321), p. 791. Rule 13.16(1) provides:

"No person who has ever been committed to or has been a patient in any prison, asylum, state hospital or similar institution, whether public or private, because of insanity, mental diseases, feeble-mindedness, epilepsy, catalepsy, alcoholism, drug addiction, 'spells', seizures or other similar disorders, shall be licensed as a motor vehicle driver until he has presented a certificate (or a certified copy thereof) signed by the head of the institution to which he has been committed stating that he has been discharged as cured."

Jenness' driver's license was suspended by the Department of Public Safety on August 10, 1972 based on his commitment to the Veterans Administration Hospital in Knoxville. On his discharge from the hospital on November 10, 1972 a certificate from the hospital director certifying Jenness was restored in mind and had been discharged was issued and furnished to the Department of Public Safety on December 8, 1972. The notice to "lift" suspension was issued on December 11, 1972.

■ The question before us in this connection is whether the Department of Public Safety through its agents acted within the discretionary function exception rendering it immune from any alleged negligence. In general, the discretionary function exception applies where the State is engaged in activities at a planning or policy-making stage. The exception does not protect governmental negligence at an "operational" level. *Stanley v. State*, 197 N.W.2d 599 (Iowa 1972); *Seiber v. State*, 211 N.W.2d 698 (Iowa 1973).

The "lift" notice was issued by the Department of Public Safety after it had received "satisfactory evidence" of competency pursuant to § 321.212, The Code. A requirement that one be personally satisfied a condition in fact exists before action is taken clearly involves discretion on the part of the decision-maker. *Lloyd v. State*, 251 N.W.2d 551 (Iowa 1977). The certificate from the Veterans Administration Hospital director certifying a belief that Jenness was restored in mind satisfied the Department that Jenness was mentally competent to operate a motor vehicle. We find the rules defining mental disability are policy statements falling within the discretionary function exception. The Department did not depart or deviate from its stated policy in lifting the suspension of Jenness' license. We therefore find the State of Iowa incurred no liability in the issuance of its lift order.

Plaintiff contends that the Department of Public Safety should have continued the suspension of his license in the light of Jenness' bad driving history. However, the record shows that Jenness' license could not have been suspended on "points". See § 321.210, The Code. The suspension was not based on his bad driving record, but on his lack of mental competency or his mental condition. The Department had no basis

for revocation or suspension of Jenness' driver's license except his mental disability. When the Department was furnished with the certificate stating Jenness was restored in mind, such disability was deemed to be overcome and the Department properly lifted the suspension of his license.

II. The plaintiff alleged that Officer Schutt negligently failed to require a manual driving test of Jenness before reinstating his license. The departmental manual makes the driving test optional with the examiner. The manual was introduced as an exhibit and has been certified to us for our attention. The decision not to give the manual driving test is discretionary but undoubtedly falls into the "operational" category. We must therefore determine whether Officer Schutt was negligent in failing to administer a manual driving test to Jenness.

The suspension of Jenness' license was based on § 321.210(4), The Code, namely, lack of mental competency to operate a motor vehicle. Schutt knew the mental status of Jenness as he had in fact notified the Department of Jenness' commitment to the VA Hospital. Schutt had no reason to doubt the validity or wisdom of the lift notice. A manual driving test might have reasonably reflected the applicant's ability to maneuver a motor vehicle, but it is difficult to conclude that such a driving test would have reflected the mental competency of the driver. In view of the fact that Jenness had been certified as restored in mind by the director or superintendent of the Veterans Administration Hospital, Schutt was justified in concluding Jenness was cured or mentally competent and due care did not require, as plaintiff suggests, that the examiner engage Jenness in conversation, investigate his reputation in the community for mental competence, or examine his driving record. The only decision Schutt made was whether to examine Jenness in a manual driving test, and he decided not to do so. The plaintiff failed to show that Schutt had a duty to examine Jenness by administering a manual driving

test or that Jenness would have failed such a test. We are disposed to agree from the record before us that Jenness was a danger on the highway and certainly sympathize with the plaintiff for his tragic loss caused by Jenness' negligence. However, we cannot find that Officer Schutt failed to dutifully carry out his responsibilities as a driver's license examiner. A reasonable person could conclude that where the ground for suspension is mental disability, the lift notice, properly issued, provided an answer to the question of present competency, and a manual driving test, if given, would not contribute to an accurate appraisal of mental ability. Schutt was apprised of and familiar with the departmental rule with respect to mental ability to drive and was not negligent in failing to make his own determination. His reliance on the lift notice issued upon the basis of the certificate of discharge from the officer in charge of the Veterans Administration Hospital was reasonable.

III. The State contends plaintiff failed to show a proximate cause relationship between the alleged negligence of the State and the resultant injury to plaintiff's decedents.

We note initially that review of a suit under the Tort Claims Act is not *de novo*, but comes to us for determination on errors at law assigned. Therefore, if substantial evidence supports the trial court's determination we are bound by it. Rule 344(f)(1), Rules of Civil Procedure. The issue of proximate cause is for the trier of fact to determine. Rule 344(f)(10), R.C.P.; *Stanley v. State, supra*, 197 N.W.2d at 604.

As we have noted *supra* the only basis for suspension of Jenness' license was his lack of mental competence. His driving record, bad as it was, did not merit revocation under § 321.209, The Code, or suspension under the point system. Therefore, the Department, in its determination of his mental competence, had to be negligent either in the issuance of the lift notice or in Officer Schutt's failure to render a manual driving test, and such negligence would have had to

cause the tragic collision resulting in the death of plaintiff's decedents.

Plaintiff failed to offer any proof that an actual driving examination by Officer Schutt would have resulted in a denial of or the reinstatement of Jenness' license. Officer Schutt testified he considered the lift notice from the Department to be dispositive of the issue of mental competence. He testified that the driving test would not have influenced his decision with regard to mental competence.

■ We conclude there was no evidence to support a finding that failure to examine Jenness in a driving test led to the reinstatement of his license. On the contrary, the evidence shows that any driving test would not have influenced the examiner who recognized his limitation in determining mental competence. We presume it is exactly this situation which led the Department to make the driving test optional with the examiner.

We note also that plaintiff proffered no evidence to show that a continued suspension of his license would have inhibited Jenness from driving an automobile on the public highway. Trial court noted Jenness sought reinstatement and that he had no citations on his record during the period of suspension. It found these factors demonstrated that Jenness would have refrained from driving while under suspension, but we do not find substantial evidence which supports this finding.

Jenness' record shows repeated traffic violations. He had apparently demonstrated a lack of willingness to comply with traffic laws. Plaintiff's counsel sought comment on the driving record at trial from the State's witness, Mr. James L. Fetters, acting director of the driver's license division of the Department of Public Safety:

Q. Does it indicate to you that this particular applicant has a rather complete disregard for the traffic laws of the State of Iowa?

A. He has more entries than the average individual, yes, sir.

Fetters also testified that in a situation such as was present in the matter before us here an individual would not normally be given a driving test because his physical skills were not in question.

Plaintiff did not establish by substantial evidence that Jenness had refrained from driving during the period of his suspension, that he would have refrained from driving during the period of his suspension, or that he would have refrained from driving had his suspension still been in force on the date of the accident. There is no evidence as to whether the license suspension would have affected Jenness' access to an automobile. In light of Jenness' demonstrated disregard for the law, we find that any presumption that a citizen will obey the law is neutralized. The suspension of Jenness' license would not, on the evidence shown, have deterred him from operating a motor vehicle on the public highway.

We find as a matter of law no proximate cause was shown between the alleged negligence of the State and the collision of the automobiles and the death of plaintiff's decedents. We find the departmental issuance of a lift notice under its rules was a proper exercise of discretion within the discretionary function exception of § 25A.14(1), The Code. Officer Schutt was reasonably justified in relying upon and did reasonably rely on the lift notice as determinative of the mental competency of Jenness.

We therefore reverse both of the cases consolidated in this appeal.

REVERSED.

MOORE, C. J., concurs.

McCORMICK, MASON and RAWLINGS, JJ., concur specially.

McCORMICK, Justice (concurring specially).

Although I concur in the result I would decide the case on a much narrower ground than the plurality does. The trial court's finding of the State's negligence was based on a holding that Trooper Schutt did not

exercise due care when he failed to review Jenness' driving record, obtain and study his medical history and give him a driving test before reinstating his driver's license. I do not believe these omissions constitute substantial evidence of lack of due care. Cf. *Wittrup v. Chicago & Northwestern Ry. Co.*, 226 N.W.2d 822, 824 (Iowa 1975).

The officer knew Jenness' license had been suspended because of mental illness. He knew the lift notice was issued by the department because the veteran's hospital had discharged Jenness as "mentally restored". He also knew the department checked Jenness' driving record before giving the lift notice. I do not believe a license examiner, in these circumstances, could be said to be required in the exercise of due care to make further inquiry to determine if Jenness, despite the certification of restoration of mental health, was nevertheless incompetent by reason of mental illness to drive an automobile. If, as plaintiff contends, any impairment of Jenness' driving skills was attributable to his mental illness, the officer had no reason to believe, as a lay person, that any deficiency in Jenness' physical driving skills existed after he was restored to mental health.

Hindsight, aided by expert medical testimony, shows this reliance was misplaced. It appears Jenness' mental illness may not be curable, and he may not have been truly "mentally restored" when he was released from the veteran's hospital. However, I would hold, as a matter of law, the license examiner in this case was not obliged in the exercise of due care to search for evidence to impeach the certification of the hospital.

In cases arising subsequently, the situation may be different. The department of public safety now knows that discharge of a mental patient as having regained "good mental health" under Code § 226.19 may not be wholly accurate, because such discharges may in fact be predicated only on a finding by the hospital that custodial treatment is no longer necessary. Because of this, due care may now require further inquiry.

MASON and RAWLINGS, JJ., join in this special concurrence.