Cheryl A. BOCKELMAN, Appellant,

v.

The STATE of Iowa, DEPARTMENT OF TRANSPORTATION, Appellee.

No. 84–378.

Supreme Court of Iowa.

April 17, 1985.

cause he was an habitual offender. The trial court decided this case on a factual basis, holding that plaintiff had failed to meet her burden of proving proximate cause. We hold plaintiff did not state a claim for which relief can be granted and affirm.

On January 7, 1980, plaintiff Cheryl A. Bockelman was a passenger in a vehicle driven by Daniel Loren Richards. Richards negligently operated his vehicle; consequently, it left the highway and crashed, causing plaintiff's injury.

█ There is substantial evidence in the record to sustain the trial court's finding that the State of Iowa was negligent because the Department of Transportation failed to take action seeking a revocation of Richards' driver's license pursuant to Iowa Code sections 321.555–.556. Within a two-year period between 1977 and 1979 Richards accumulated six or more reportable driving offenses, and the Department did not certify the records to the proper county attorney for the filing of a petition requesting that Richards be adjudicated an habitual offender and ordered not to operate a motor vehicle for a period of one year as specified in sections 321.559–.560. A Department official admitted that computer problems between 1976 and 1980 and other types of inefficiencies prevented the Department from identifying all drivers whose licenses could have been suspended. Thus, Richards possessed a driver's license on the date of the accident.

Plaintiff brought an action against Richards and obtained a default judgment of $300,000. In a separate action plaintiff sued the State under the State Tort Claims Act, Iowa Code ch. 25A, alleging the Department was negligent in failing to take action against Richards under the habitual offender statutes. The trial court found that the State was negligent in failing to act, but this negligence was not the proximate cause of plaintiff's injuries. The court further found that plaintiff did not establish by a preponderance of the evidence that suspension of Richards' license would have prevented him from driving at

John C. Louis of Louis, Moore, Kohorst, Louis, Murtaugh & Kohorst, Harlan, for appellant.

Thomas J. Miller, Atty. Gen., Brent Appel, Deputy Atty. Gen., and Craig Gregersen, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, SCHULTZ, CARTER and WOLLE, JJ.

SCHULTZ, Justice.

The deciding issue in this appeal is whether a party injured by a negligent motorist may recover from the State for its negligence in failing to seek the suspension of such motorist's driving privileges be-

the time and place of the accident. Citing *Davis v. Jenness*, 253 N.W.2d 610, 615 (Iowa 1977), which states that a demonstrated disregard for the law negates any presumption that a citizen will obey the law, the court held that, as a matter of law, proximate cause was not established.

On appeal, plaintiff initially attacks the trial court's fact-finding on the issue of proximate cause. Plaintiff then urges that the court incorrectly applied a theory which shields the state from tort claims based on negligent failure to act under the habitual offender provisions. The State urges that there was substantial evidence to support the court's finding, but also claims that failure to properly discharge a duty under the habitual offender statutes does not give rise to redress by a private party in a tort action.

■ We agree that substantial evidence in the record supports the trial court's finding that plaintiff did not prove proximate cause. Richards' driving record showed intentional driving violations. When his license was suspended following the accident, he was arrested for driving without a license. Opinion evidence was given that intentional violators do not quit driving after suspension. The trial court could properly find that the accident was not caused by the Department's failure to act.

Both parties also devoted substantial portions of their appellate briefs to the issue of whether the trial court's ruling deprived plaintiff of her cause of action. Some problems exist concerning preservation of error on this issue. However, both parties have addressed the problem on appeal, and the issue directly arises from the trial court's determination that proximate cause was lacking as a matter of law—effectively precluding this action. Since the issue is likely to recur, we will address the validity of this cause of action.

■ Authority for tort actions against the State is provided by the State Tort Claims Act, but it does not supply the answer we seek. It does not create a new cause of action, but merely gives recognition to and provides a remedy for a cause of action already existing by reason of a wrong committed by a state agent for which redress could not be had because of the common-law doctrine of governmental immunity. *Graham v. Worthington*, 259 Iowa 845, 861, 146 N.W.2d 626, 637 (1966). The State does not claim that the present action falls within any of the exceptions of the Act. Section 25A.2(5)(a) defines "claim" as follows:

> Any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

■ Although a "claim" is defined to include damage "caused by negligent or wrongful act or omission of any employee," such negligence will not state a cause of action when no tort action would otherwise exist under our law. *Smith v. State*, 324 N.W.2d 299, 300 (Iowa 1982). Liability is strictly limited to situations when "a private person, would be liable to the claimant for such damage." § 25A.2(5)(a). Whether the present action properly states a cause of action is ascertained under common-law tort principles.

■ The essential elements of a tort claim for negligence generally include: (1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) a failure to perform that duty; (3) a reasonably close causal connection, i.e., legal cause or proximate cause; and (4) damages. W. Prosser, *Handbook of the Law of Torts* § 30, at 143 (4th ed. 1971).

■ Plaintiff maintains the State's duty is created by statute. The legislature has defined habitual offenders and provided a course of action which allows the district court to bar them from operating motor vehicles and order surrender of their driver's licenses for a period of two to six

years; criminal penalties are provided for violation of suspension. Iowa Code §§ 321.555–.562 (1983). In the present case Richards met the definition, accumulating convictions for more than six separate and distinct offenses within a two-year period. § 321.555(2). When a person appears to be an habitual offender, section 321.556 states that the Director of Transportation "shall certify certain abstracts to the appropriate county attorney in order that he may file a petition and obtain a court order for the surrender of such driver's license pursuant to sections 321.558–.559. We have indicated that the purpose of this statutory scheme is to protect the public that uses the highways from the habitual offender. *State v. Thomas*, 275 N.W.2d 422, 423 (Iowa 1979). The habitual offender statutes, however, are silent concerning the responsibility of the Department for failure to carry out its duties.

We are faced with a situation involving a statutory violation, but we are provided no express remedy. Plaintiff, by her pleadings and in this appellate argument, maintains that the State was negligent because of a breach of its duty under the habitual offender statutes which continued to exist up to the time of the accident and was a concurrent cause of the accident. Should we construe the statute to provide an implied remedy by providing a cause of action?

Neither party cites any Iowa case authority, and we have not found any. The plaintiff maintains that the trial court did not err in assuming that the habitual offender statutes created an actionable duty. The trial court determined this case on the plaintiff's failure to show proximate cause, based on the reasoning of *Davis v. Jenness*, 253 N.W.2d 610 (Iowa 1977) (Rees, J., plurality), and held as a matter of law that defendant's negligence was not a substantial factor in producing the damage to plaintiff. In *Davis* the plaintiff was injured by a driver whose license had been restored by the Department following a suspension for mental incompetence. The plaintiff claimed the driver had a bad driving history and that, not only should the

license not have been reinstated, but a driver's test should have preceded any lift of the suspension. We held that under the record the Department was not negligent because it acted reasonably, but we then found as a matter of law that no proximate cause was shown between the alleged negligence and the collision. *Id.* at 614–15. We noted the plaintiff did not establish that this driver with repeated traffic violations would have refrained from driving during the period of his suspension and stated, "In light of Jenness' demonstrated disregard for the law, we find that any presumption that a citizen will obey the law is neutralized." *Id.* at 615. We did not address the question of whether there is a cause of action for allowing an habitual offender a driver's license. We merely reasoned that there was no evidence the alleged habitual violator would have been deterred from operating a motor vehicle.

Other jurisdictions have wrestled with the problem of whether or not there is a cause of action for failure to suspend an habitual offender or, similarly, for failure to suspend an incompetent or incapable driver. We briefly review these cases and their applicability to our situation.

The New York courts appear to have consistently held there is no cause of action for the negligent issuance or failure to revoke a driver's license. *Southworth v. State*, 47 N.Y.2d 874, 876, 392 N.E.2d 1254, 1255, 419 N.Y.S.2d 71, 72 (1979) (no action for negligent issuance of interim license to ineligible driver since act is for general public rather than individual; negligent issuance of a license or failure to revoke generally is not the proximate cause of injury inflicted by licensee); *Guy v. State*, 50 Misc.2d 29, 30, 269 N.Y.S.2d 504, 507 (Ct.Cl.1966) (no action for failure to revoke a six-time violator—no causal connection because injury not reasonably perceivable and revocation would not prevent use of road by driver); *Granger v. State*, 14 A.D.2d 645, 646, 218 N.Y.S.2d 742, 744 (1961) (failure to revoke a license for insurance cancellation was governmental function sovereign in character and not proxi-

mate cause of accident); *Chikofsky v. State*, 203 Misc. 646, 647–49, 117 N.Y.S.2d 264, 264–66 (Ct.Cl.1952) (no action for state's failure to seize license of habitual offender upon grounds that that duty is to public in general; no proximate cause since failure would not prevent offender from driving). All these cases rely upon the failure to show proximate cause. In *Guy* it was stated:

> [I]t does not follow, ipso facto, that such abuse constituted causal connection between the issuance of a license and the accident. The irresponsibility of one driver cannot be predicated upon the discretion of the individual who issued or revoked a license as such risk is not reasonably perceivable.... [t]he revocation of a license would not prevent the use of the roads by someone without the moral regard for the sanction of the law.

50 Misc. at 30, 269 N.Y.S.2d at 507.

Some jurisdictions have determined that their peculiar licensing or revocation statutes do not create a public duty, *Ryan v. State*, 420 A.2d 841, 843 (R.I.1980), or that the purpose of these statutes was not for public safety, *Lundquist v. Department of Public Safety*, 674 P.2d 780, 785 (Alaska 1983). Other jurisdictions have allowed a claim for negligently issuing a license to a physically or mentally incompetent or incapable driver. *Oleszczuk v. State*, 124 Ariz. 373, 375–77, 604 P.2d 637, 640–41 (1979); *First Insurance Co. v. International Harvester Co.*, 659 P.2d 64, 68 (Hawaii 1983); *Alessi v. Allstate Insurance Co.*, 400 So.2d 1089, 1090–91 (La.Ct.App. 1981). These cases deal with the ability of the driver to drive; they are not comparable to the situation of an habitual offender whose ability is not impaired, but who has a propensity to violate the law.

We do not adopt the various theories advanced in these cases from other jurisdictions. We have rejected the "public duty doctrine" as applied to fire inspection statutes. *Wilson v. Nepstad*, 282 N.W.2d 664, 667–68 (Iowa 1979). We do not have a fact situation in which the State negligently provided or failed to suspend a driver's license to a person lacking the physical ability or competence to drive a vehicle, and we need not and do not decide the viability of an action for negligence on those facts.

We do agree with the New York rulings that reject liability for failure to prove proximate cause based on findings that suspension or revocation would not prevent an habitual offender from driving. In situations in which the government negligently failed to suspend the license of an habitual offender, we find that proximate cause cannot be shown.

Additional reasons dictate that proof of proximate cause is at best uncertain under these or similar facts. Section 321.556 does not provide time limits within which the Department of Transportation must act. Once the Department has acted, however, it loses control over the proceedings. The county attorney then must act by filing a petition, service must be obtained, a trial date must be set, and the court must rule. No time limitations accompany any of these acts. §§ 321.556–.559. Whether a suspension will be ordered or not is speculation. Even if it is shown that an habitual offender would honor suspension by not driving, it cannot be shown with certainty when the suspension would become effective.

 In summary, we hold that failure to suspend the license of an habitual offender cannot be the proximate cause of injury since it is not reasonably foreseeable the driver will cease operating a motor vehicle because of suspension or revocation of the license. We do not perceive that the legislature intended through the enactment of section 321.556 to imply or create a new cause of action for a violation of the provision by the Department of Transportation. Thus, we would hold as a matter of law that plaintiff is not entitled to recover since she did not state a cause of action.

AFFIRMED.