McGrath v. USA                          CV-96-078-M    03/06/97
                    UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEW HAMPSHIRE


John P. McGrath, Executor of the
Estate of Mary Jane McGrath,
        Plaintiff

        v.                                        Civil No. 96-78-M

United States of America,
        Defendant.


                              O R D E R


        This personal injury/wrongful death action arises from a

fatal midair collision between an airplane and a parachutist

during an air show in Lebanon, New Hampshire.  Mary Jane McGrath

piloted the airplane; Scott Pond was the parachutist.  The Estate

of Mary Jane McGrath claims that the Federal Aviation

Administration's negligence in overseeing the air show

proximately caused the accident and, therefore, asserts that the

FAA is liable to it for damages.


        In response, the government contends that this court lacks

subject matter jurisdiction over this claim under the Federal

Tort Claims Act because the FAA's conduct is shielded from

liability by the discretionary function exception.  The

government also claims that, under the governing tort law of New Hampshire, it did not owe Mary Jane McGrath any actionable duty.[1] And, even assuming that it did owe (and breach) such a duty, the government claims that, as a matter of law, the FAA's alleged negligence did not proximately cause the mid-air collision which resulted in Mary Jane McGrath's death. Accordingly, the government moves to dismiss the McGrath Estate's claims pursuant to Fed. R. Civ. P. 12(b).

## BACKGROUND

On July 6, 1993, Parker Aviation ("Parker"), in conjunction with the Lebanon Riverside Rotary Club ("Rotary"), obtained a Certificate of Waiver ("Certificate") from the FAA which authorized specific deviations from Federal Aviation Regulations ("FARS") necessary to conduct an air show at the Lebanon Municipal Airport. The Certificate waived compliance with specific FARS from July 23 through 25, 1993, and allowed certain otherwise prohibited activities, such as aerobatic flight below 1500 feet. As holders of the Certificate, the Rotary and Parker

---

[1] The parties agree that, under the provisions of the Federal Tort Claims Act, the Estate's negligence claims against the FAA are governed by the substantive law of New Hampshire. See 28 U.S.C. §§ 1346(b), 2674.

2

were primarily responsible for the overall safety of the event and compliance with all applicable regulations. The FAA, through its inspector-in-charge (who was present at the air show), was not responsible for the management, control, or direction of the aviation event. FAA Order 8700.1, CHG9, section 1(7), dated June 1, 1993 (Exhibit 4 to defendant's motion to dismiss). Instead, the inspector was present to "provide adequate surveillance of the aviation event and to ensure compliance with the provisions of the certificate." Id.

Mary Jane McGrath, a biplane pilot, and the Pond Family Skydivers (a family act that included Scott, Nate, and Gary Pond) were among several performers hired to participate in the air show. On July 24, 1993, the opening day of the air show, a program was distributed highlighting the day's upcoming acts. The program disclosed that the Pond Family Skydivers would perform a "flag jump" to open the air show. That act consisted of Pond Family Skydivers jumping from the same plane, linking up, deploying their parachutes, and releasing an American flag to trail behind them during their descent.

On the morning of the opening day, Parker held a pre-show briefing for all air show participants, as required by provisions of the Certificate. Among those in attendance were McGrath and Nate Pond (representing the Pond Family Skydivers). Neither Gary Pond, Scott Pond, nor William Batesole (the pilot of the Ponds' jump plane) attended. During the briefing, Parker discussed the various acts listed in the program. For the first time Parker announced that the Pond Skydivers would be circled by two biplanes (one piloted by McGrath) during their descent. That maneuver was not disclosed in the program. Parker then deferred to Nate Pond, who described the act in greater detail.

Following the briefing, the first act began as scheduled at approximately 12:45 p.m. The Ponds' jump plane took off, followed by the two biplanes. Upon reaching the proper altitude, Nate and Gary Pond jumped from the plane and deployed their parachutes. The first biplane moved toward Nate and Gary Pond and began circling as they descended. McGrath, piloting the second biplane, followed immediately behind the first. As McGrath began her approach, a third skydiver, Scott Pond, jumped from the Pond plane. McGrath's biplane and Scott Pond collided in midair, killing both McGrath and Pond.

4

The McGrath Estate claims that Mary Jane McGrath expected that only Nate and Gary Pond would be jumping and asserts that the Ponds changed the act without informing her. The Estate also alleges that the third jumper, Scott Pond, was neither properly licensed by the United States Parachute Association ("USPA") nor approved to participate in the air show. It claims that if the FAA had properly performed its duties, Scott Pond would not have been allowed to jump and Mary McGrath would not have died. Moreover, the Estate asserts that even if the FAA had authorized Scott Pond to participate in the jump, the accident would not have occurred if the FAA had followed its own procedures and required the Pond Family Skydivers to list (on the application for the Certificate) every individual who might participate in that act. Had Scott Pond been listed as one of skydivers who planned to participate in the act, the Estate claims that Mary McGrath would have known that three, rather than two, parachutists planned to exit the plane, and she would not have begun circling until after the third had exited the plane. In short, the Estate claims that the FAA negligently issued the Certificate (because the application was incorrectly or inadequately completed) and negligently failed to enforce the terms of the Certificate.

## Discussion

The Estate says the FAA failed to perform certain mandatory duties when it issued the Certificate based upon an application which: (i) failed to specifically list each of the individual members of the Pond Family Skydivers who planned to perform in the opening ceremony's "flag jump"; (ii) failed to list the qualifications of each of those skydivers; and (iii) failed to list the type of plane from which they planned to jump and the name of its pilot. The Estate ascribes particular significance to the application's failure to disclose the names and qualifications of each of the skydivers because it says Scott Pond was not properly licensed to participate in the act. The Estate says that if the FAA had insisted that the application be properly completed, it would have discovered that Scott Pond planned to jump but was not properly licensed to do so. Therefore, the Estate asserts, the FAA would not have permitted him to jump, no accident would have occurred, and Mary Jane McGrath would not have been killed. Alternatively, the Estate claims that if the FAA had properly performed its duties, McGrath would have known that three, rather than two, parachutists planned to exist the Pond jump plane and, again, no accident would have occurred.

Even if the court accepts, for the purpose of this discussion, the Estate's assertion that the FAA breached a mandatory duty not to issue the Certificate given the allegedly inaccurate and incomplete application, that conduct cannot be said to have proximately caused the subsequent fatal mid-air collision. The Estate acknowledges that the accident was not caused simply because Scott Pond participated in the flag jump. Rather, the accident was caused by the failure to inform Mary Jane McGrath that Pond planned to participate (or, if she was informed, by her misunderstanding or lapse of memory).

While it certainly can be said that the mid-air collision would not have occurred "but for" the FAA's issuance of the Certificate, there is no evidence from which a reasonable trier of fact could find that the FAA's conduct was the legal or proximate cause of that accident. Therefore, the court holds, as a matter of New Hampshire tort law, that the conduct of the FAA in issuing the Certificate did not proximately cause the fatal accident. Accordingly, the court need not address whether the discretionary function exception applies, nor need it consider whether the FAA owed an actionable duty to McGrath to prevent the accident. Even crediting the Estate's claim that the

discretionary function exception does not shield the government from liability, and accepting, for the purposes of this discussion, its assertion that the government had and breached a duty owed to McGrath, the government is still entitled to judgment as a matter of law.[2]


A.   Proximate Causation.

At this juncture, it is important to distinguish between "but for" causation and "legal" or "proximate" causation.  The Restatement (Second) of Torts provides that:

> In order to be a legal cause of another's harm, it is
> not enough that the harm would not have occurred had
> the actor not been negligent. . . . [T]his is
> necessary, but it is not itself sufficient.  The
> negligence must also be a substantial factor in
> bringing about the plaintiff's harm.  The word
> "substantial" is used to denote the fact that the
> defendant's conduct has such an effect in producing the
> harm as to lead reasonable men to regard it as a cause,
> using that word in the popular sense, in which there
> always lurks the idea of responsibility, rather than in
> the so-called "philosophic sense," which includes every
> one of the great number of events without which any
> happening would not have occurred.  Each of these
> events is a cause in the so-called "philosophic sense,"

---

[2] Initially, the existence of proximate cause is an issue for the court to resolve.  Only if the court determines that the evidence is such that a reasonable person could find legal fault or causation, is the issue submitted to the jury.  MacLeod v. Ball, 140 N.H. 159, 161 (1995); Hurd v. Boston & Maine R.R., 100 N.H. 404, 408 (1957).

8

> yet the effect of many of them is so insignificant that
> no ordinary mind would think of them as causes.

Restatement (Second) Torts, § 431, comment a. So, in order to constitute the "proximate cause" of an injury, an act (or omission) must be a "substantial factor" in bringing about the resulting injury. In attempting to distinguish between "but for" causation and "proximate" causation, the New Hampshire Supreme Court has noted:

> Unlike the fact of causation, with which it is often
> hopelessly confused, [proximate causation] is
> essentially a question of whether the policy of the law
> will extend the responsibility for the conduct to the
> consequences which have in fact occurred. Quite often
> this has been stated, and properly so, as an issue of
> whether the defendant is under any duty to the
> plaintiff, or whether his duty includes protection
> against such consequences.

McLaughlin v. Sullivan, 123 N.H. at 341-42 (quoting W. Keeton, et al., Prosser and Keeton on the Law of Torts § 42, at 244 (4th ed. 1971)). Accordingly, "[the decision to impose liability reflects a judicial determination that 'the social importance of protecting [the plaintiff's interests] outweighs the importance of immunizing the defendant from extended liability.'" Id. at 342 (citation omitted).

9

Under New Hampshire's common law, "[t]he requirement of proximate cause 'confines the liability of a negligent actor to those harmful consequences which result from the operation of the risk, or of a risk, the foreseeability of which rendered the defendant's conduct negligent.'" Weldy v. Town of Kingston, 128 N.H. 325, 332 (1986) (citation omitted). See also Indep. Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 113 (1993) (holding that "the test of proximate cause is foreseeability.") (emphasis in original). Thus, in order to establish the existence of proximate cause, a plaintiff must demonstrate that his or her injury was the natural and probable result of the negligence and that it was a reasonably foreseeable consequence of the negligent act.

By issuing the Certificate, the FAA certainly took one of the many actions in the series of events which led to the fatal mid-air accident; plainly, the flag jump (indeed, the entire air show) and accident would not have occurred if the FAA had denied Parker's application for the Certificate. However, the issuance of the Certificate did not proximately cause the mid-air collision between Pond and McGrath. Instead, the accident was proximately caused by either a misunderstanding or failure of

10

communication between McGrath and the Pond Family Skydivers with regard to the precise nature of the act and, more specifically, the number of parachutists that would be participating in that act.

B.    Scott Pond's Lack of a USPA Class C or D License.

The Estate does not claim that the actual mid-air collision was in any way caused by the fact that Scott Pond lacked the appropriate skydiving license or rating.  It merely asserts that the accident would not have occurred "but for" his participation in the event without McGrath's knowledge.  Accordingly, the Estate claims that the accident would not have occurred "but for" the FAA having failed to stop Scott Pond from participating in the event.[3]

_____

[3]  Parenthetically, the court notes that neither the Certificate nor the applicable FARS required Scott Pond to hold a class C or D USPA license in order to participate in the flag jump.  See NTSB Factual Report - Aviation at 1 (Exhibit G to plaintiff's memorandum of law) (discussing the details of the mid-air collision and noting that, "Two of the three jumpers were licensed through the United States Parachute Association (USPA). The parachutist that was fatally injured did not have a license, nor was it a requirement under 14 CFR Part 105, at the time of the accident.")  Nevertheless, the Estate claims that the terms of the Certificate implicitly required all parachutists to hold a Class C or D USPA license.  See Complaint at para. 19.

Had the mid-air collision been caused by or even related to Scott Pond's lack of a Class C or D USPA license, arguably the FAA's alleged failure to verify the status of his license might be viewed as one of the proximate causes of the accident. So, for example, if one could plausibly assert that an unlicensed skydiver would likely act in a manner that caused this accident, one might reasonably conclude that the FAA's conduct (i.e., allegedly negligently permitting him to participate in the event) proximately caused the accident. Stated somewhat differently, under those circumstances, one might conclude that it was reasonably foreseeable that, by permitting an unlicensed parachutist to participate in the act, an accident of this sort could result.

Here, however, the Estate does not allege that Scott Pond's lack of a Class C or D USPA license caused or contributed in any way to the accident. Because the accident was entirely unrelated to the nature or status of Scott Pond's jump qualifications, the court is constrained to conclude that the mid-air collision was not a foreseeable consequence of (nor was it proximately caused by) the FAA's "permitting" Pond to participate in the event without the proper licensing credentials. Cf. Bockelman v.

12

<u>Department of Transportation</u>, 366 N.W.2d 550 (Iowa 1985) (citing several cases which hold that the negligent issuance of a drivers' license or the negligent failure to revoke a drivers' license is not the proximate cause of injury inflicted by the licensee). <u>See generally</u> Jay M. Zitter, Annotation, <u>State's Liability to One Injured by Improperly Licensed Driver</u>, 41 ALR4th 111, 114 (1985) ("Some of these courts have reasoned that since the purpose of the licensing statutes was to avoid injuries <u>that would be caused by poor drivers</u>, a special duty of care was stated towards persons injured by drivers who were improperly licensed . . . [O]ther courts have [] ruled that the state could not be held liable, reasoning that because it was the driver's negligence and not the lack of a license that directly caused the accident, the state's alleged misfeasance was not the proximate cause of the injuries to the plaintiffs.") (emphasis added).

It necessarily follows that because Scott Pond's skills, qualifications, ratings, and licensure are not implicated in plaintiff's theory of liability, beyond supporting its argument that he should not have jumped at all, the FAA's conduct cannot be said to have proximately caused the accident. <u>See</u> <u>Indep.</u>

13

Mechanical Contractors v. Gordon T. Burke & Sons, 138 N.H. at 110; Weldy v. Town of Kingston, 128 N.H. at 332.  It was not reasonably foreseeable to the FAA that, by permitting an unlicensed parachutist to participate in the flag jump, the stunt's coordinators would mislead McGrath with regard to the number of participants in the stunt (or, alternatively, that McGrath would misunderstand how many skydivers planned to participate).

C.    The Application's Failure to List the Names of Each
      Individual Member of the Pond Family Skydivers.

The mid-air accident was proximately caused by either: (i) McGrath's (and/or the other circling biplane pilot's) failure to understand that the Pond Family Skydivers planned to have three skydivers, rather than two, participate in the flag jump; or (ii) the Pond Family Skydiver's failure to disclose to McGrath at the pre-show meeting the fact that three skydivers planned to participate in the opening act.  Understandably, the Estate claims the accident was the product of the latter.

The Estate asserts that if McGrath had known that three jumpers planned to participate in the opening act, the accident would have never occurred.  The Estate's assertions are likely correct — if McGrath understood that three parachutists, rather

14

than two, planned to participate in the flag jump she surely would have been alert for and identified the third jumper before beginning the circling maneuver. Nevertheless, no reasonable trier of fact could conclude that the FAA's alleged negligent failure to require the Pond Family Skydivers to disclose (on the application) the names of all individuals who <u>might</u> participate in the flag jump proximately caused the accident.

The pre-show briefing was convened (as required by the terms of the Certificate) for the specific purpose of informing all performers of the details of each act.

> **Preshow Briefing.** Waivers or authorizations for aerial demonstrations must include the requirement for a preshow briefing of all performers (pilots, required crewmembers, parachutists, etc.). . . . The briefing must cover every aspect of the event. . . . The [FAA inspector-in-charge] is not responsible for conducting the briefing, but must be available at the briefing for any questions concerning the Certificate of Waiver or Authorization and its provisions.

FAA Order 8700.1, CHG9, section 9, dated June 1, 1993 (Exhibit 4 to defendant's motion to dismiss). The purpose of the preshow briefing was undoubtedly obvious to all concerned — to make certain that all participants in the various acts were fully and

accurately briefed regarding the details of each act (as well as any last minute deviations).[4]

The application for the Certificate listed the "Pond Family Skydivers" as participating in the show's opening event; it did not disclose how many members of the Pond Family planned to participate. Even accepting the Estate's assertion that neither McGrath nor the pilot of the other biplane was aware that Scott Pond planned to participate in the flag jump, and that both expected (and were told) that only two parachutists would be jumping, then what caused the accident was the Pond Family Skydiver's failure to disclose to McGrath that three parachutists planned to exit the jump plane.

As a matter of law, the FAA's alleged negligence in failing to require more detail in the application before issuing a Certificate did not proximately cause this accident. The Estate

---

[4] FAA Order 8700.1, CHG4, section 1(C)(6), dated April 1, 1990 (Exhibit 6 to defendant's motion to dismiss), specifically contemplates that air show participants may not have all pertinent information available when the application for a certificate of waiver is submitted. Accordingly, the pre-show briefing is of critical importance insofar as it is the final opportunity to make certain that all show participants are completely informed of all pertinent details of the stunts.

16

cannot reasonably claim McGrath relied to her detriment upon the disclosures contained in the allegedly incomplete Certificate application; that document (which disclosed only that the "Pond Family Skydivers" planned to participate in the jump) could not have led her to reasonably conclude that only two (or three or five or twenty) parachutists would participate in the act. McGrath had to have obtained her mistaken information about two jumpers from some source other than the application or the Certificate. The Estate acknowledges that the FAA did not provide her with that erroneous information, and even if the application had listed a number of possible participants, neither the application nor the Certificate purported to describe the particular opening act in any way at all.

The FAA's alleged negligence can only be deemed to have proximately caused the reasonably foreseeable consequences of that conduct. Here, as a matter of law, the court finds that it was not reasonably foreseeable that by granting the Certificate despite an incomplete application either: (i) McGrath would be affirmatively misled, at the preshow briefing or otherwise, with regard to the number of parachutists expected to participate in the flag jump; or (ii) that if she had been told that the jump

17

would involve three parachutists, McGrath would begin circling the performers after only two had exited the jump plane. Accordingly, the court concludes that no reasonable juror could find that the FAA's alleged negligence proximately caused McGrath's death.

While it is probably true that the accident would not have occurred if the FAA had performed its allegedly mandatory duties properly, because no Certificate would have been issued and hence no air show would have taken place,[5] that fact does little to support the Estate's claim that the FAA is legally responsible for Mary Jane McGrath's death. It is not enough for the Estate simply to establish "but for" causation. So, for example, if McGrath's plane had crashed, not because it collided with Scott Pond, but because it stalled on departure, the Estate could not reasonably argue that the FAA is liable for her death. While the Estate could in that circumstance, like here, assert that the air show would not have occurred (and, therefore, she would not have

---

[5] Of course, it is also plausible that the application might have been resubmitted in a more complete manner after an initial denial, but a more complete application would still say nothing about who would participate in specific events and how they would participate. That information is imparted at the safety briefing.

been flying her aircraft) "but for" the FAA's alleged negligence in issuing the Certificate, such a claim would necessarily fail for want of the requisite element of <u>proximate</u> causation, a critical component of which is foreseeability. Certainly, no reasonable person could conclude that a crash caused by pilot error — a departure stall — is a reasonably foreseeable consequence of negligently issuing an air show Certificate.

So it is in this case. The Estate can (and has) credibly listed a series of events (beginning with the FAA's alleged negligent issuance of the Certificate and culminating in Mary Jane McGrath's death), the absence of any one of which might have broken the "chain of causation" and, therefore, prevented her death. However, more is necessary to demonstrate that "but for" causation is also legal or "proximate causation." And, as noted above, evidence of that sort is entirely absent in this case.

## Conclusion

For the foregoing reasons, the court holds, as a matter of law, the FAA's allegedly negligent conduct in issuing the Certificate did not proximately cause the mid-air collision which tragically took the lives of Mary Jane McGrath and Scott Pond.

19

Accordingly, the government's motion to dismiss (document no. 9) is granted. The Clerk of the Court is directed to enter judgment in accordance with the terms of this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 6, 1997

cc:  Charles W. Grau, Esq.
     Mark Scribner, Esq.
     Gretchen Leah Witt, Esq.
     Frances M. Recio, Esq.